# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

| | |
|---|---|
| **JAMES C. PIERCE** | **CIVIL ACTION NO. 06-1185** |
| **VS.** | **SECTION P** |
| **BURL CAIN, WARDEN** | **JUDGE DOHERTY** |
| | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2254 on July 13, 2006 by *pro se* petitioner James C. Pierce.  Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections, incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  Petitioner is serving sentences totaling 85 years, imposed following his 1998 convictions for manslaughter and first degree vehicular negligent injuring entered in the Thirteenth Judicial District Court for Evangeline Parish, Louisiana.

This matter has been referred to the undersigned in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

## STATEMENT OF THE CASE

According to the opinion of the Third Circuit Court of Appeal, the offenses were committed on May 3, 1997, when petitioner was driving under the influence of alcohol and marijuana and he ran over three young boys who were riding bicycles.  Two of the

boys, who were brothers, were found dead at the scene by their parents. The third boy was pinned under petitioner's vehicle and was seriously injured. After the wreck, petitioner fled the scene. *See State of Louisiana v. James C. Pierce*, 01-94 (La. App. 3 Cir. 10/31/2001), 799 So.2d 732, 736.

On direct appeal after remand, the Third Circuit Court of Appeals outlined the procedural history of petitioner's case through November 2000 as follows:

> James C. Pierce was charged by bill of information with driving while intoxicated, third offense, two counts of manslaughter, and one count of first degree vehicular negligent injuring. A motion to recuse the trial judge, Judge Preston Aucoin, was filed on October 16, 1998, and after a hearing conducted by a different division of the court, the motion was denied. The Defendant filed a writ application in this court. We denied relief, finding no error in the trial court's ruling. After trial, the jury returned a verdict of guilty on all counts. At the sentencing hearing, in December 1998, the Defendant re-urged his motion to recuse. The motion was denied by Judge Aucoin. The trial judge sentenced the Defendant to serve consecutive sentences of five years at hard labor for his conviction of third offense DWI, forty years at hard labor for each of the manslaughter convictions and five years at hard labor for first degree vehicular negligent injuring, for a total of ninety years. The trial court denied the Defendant's oral request for reconsideration of the sentence.
>
> The Defendant appealed. This court vacated his sentences in an unpublished opinion and remanded the case to the trial court for disposition of an outstanding pro se motion for post-verdict judgment of acquittal. After the case was remanded, the Defendant filed another motion to recuse Judge Aucoin. On April 6, 2000, Judge Aucoin ruled that he lacked jurisdiction to sign an order setting the motion for hearing. The Defendant filed an emergency writ with this court. We ruled that the trial court erred in finding it lacked jurisdiction to assign the motion for hearing. This court remanded the case to the trial court for immediate assignment. This court denied an application for rehearing filed by the State. Subsequently, the Supreme Court denied the State's writ application. See *State v. Pierce, 00-1654* (La.6/14/00); 763 So.2d 610. After a hearing on the motion to recuse on

2

June 29, 2000, the motion was denied. A hearing on the Defendant's post-verdict judgment of acquittal was held on October 5, 2000. The trial judge denied the motion. On October 9, 2000, the Defendant was sentenced to serve five years at hard labor for third offense DWI, forty years at hard labor for each of the manslaughter convictions, and five years at hard labor for first degree vehicular negligent injuring. The judge ordered that the sentence for DWI run concurrently with the sentences for the remaining counts, which are to run consecutively, for a total of eighty-five years. Defense counsel orally requested reconsideration of the Defendant's sentence. Counsel stated that he would follow-up with a written motion. While the oral motion to reconsider sentence was pending, the Defendant filed a pro se written motion to reconsider, which was denied. The trial court reserved defense counsel's right to file a similar motion within the delays of La.Code Crim.P. art. 881.1(A). On November 15, 2000, the oral motion to reconsider sentence was addressed in open court. The trial court noted that the oral motion was never followed up by a written motion. It denied the motion, noting that no specific grounds had been raised by defense counsel.

*See State of Louisiana v. James C. Pierce*, 01-94 (La. App. 3 Cir. 10/31/2001), 799 So.2d 732, 735-736.

In his direct appeal after remand, petitioner raised the following claims: (1) erroneous denial of petitioner's motions to recuse Judge Preston Aucoin; (2) the trial court erred in admitting into evidence his first DWI conviction because petitioner was not advised of his right to remain silent at the prior proceeding and he was not advised at either the first or second DWI proceeding that the "enhancement process could lead beyond DWI convictions to manslaughter convictions"; (3) the trial court erred in admitting into evidence the blood alcohol test results administered eight hours after the accident; (4) petitioner's convictions for manslaughter and DWI third offense constitute a double enhancement/double jeopardy violation; (5) petitioner's sentence was excessive;

(6) that there was insufficient evidence to support petitioner's manslaughter convictions; and (7) the trial court erred in denying petitioner's motion for post-verdict judgment of acquittal.[1]

The appellate court found that petitioner's second claim for relief was not properly before the court because petitioner had failed to properly raise that claim in the lower court. More specifically, the court found that petitioner failed to argue that his first DWI conviction was invalid because petitioner was not advised of his right to remain silent and, with respect to both the first and second DWI proceeding, failed to raise an objection on grounds that he was not advised that the enhancement process could lead to a manslaughter conviction. That claim is raised as claim 2 herein.

The Third Circuit found merit in petitioner's fourth assignment of error, that his convictions for manslaughter and DWI third offense violated his right against double jeopardy. Accordingly, petitioner's conviction for DWI Third Offense was reversed and his sentence on that charge was vacated. The remaining convictions and sentences were affirmed. *See State of Louisiana v. James C. Pierce*, 2001-0094 (La. App. 3 Cir. 10/31/2001), 799 So.2d 732.

Petitioner's request for review in the Louisiana Supreme Court was denied on January 10, 2003 without comment. *State of Louisiana v. James C. Pierce*, 2001-3312 (La. 1/10/2003), 834 So.2d 427.

---

[1]Petitioner also filed a supplemental pleading in which he provided additional argument in support of his second and seventh assignments of error, and sought a copy of the tape of his July 1994 DWI plea colloquy . [*See* rec. doc. 7, Ex. A]. That request was denied by the appellate court. *See State of Louisiana v. James C. Pierce*, 01-94 (La. App. 3 Cir. 10/31/2001), 799 So.2d 732, 752.

Petitioner filed an Application for Post-Conviction Relief on April 28, 2003. Although petitioner raised several claims in post-conviction proceedings, at the October 14, 2004 evidentiary hearing, counsel withdrew all but two claims, to wit, that his convictions constituted an *ex post facto* violation and that he received ineffective assistance of counsel. [rec. doc. 1-6, p. 11-12, 34-35 and 66, 74]. Among those claims withdrawn were the claims that the trial court erred by refusing to allow a special jury instruction regarding riding bicycles on highways and bicycle paths (claim 8 herein), and that petitioner's convictions for manslaughter were unconstitutional because petitioner's third DWI conviction, necessary for a manslaughter conviction, was vacated on direct appeal (claim 12 herein). At the conclusion of the October 14, 2004 evidentiary hearing on the remaining two claims, the trial court denied relief. [rec. doc. 1-6, p. 33 and 71-73].

Unbeknownst to defense counsel, petitioner's *pro se* Motion to Correct an Illegal or Invalid Sentence, filed pursuant to Louisiana Code of Criminal Procedure articles 882 and 872, based on alleged irregularities in the grand jury and its minutes, was also set to be heard on October 14, 2004. [rec. doc. 1-6, p. 75-78]. Initially, Pierce stated that he did not want to abandon those claims. [*Id*. at 77]. However, after discussion of those claims with the court, his retained counsel and inmate counsel, petitioner withdrew these claims. [*Id*. at 78-93, 92].

On January 3, 2005, petitioner filed an application for writs in the Third Circuit Court of Appeals.[2] On March 1, 2005, the Third Circuit denied writs finding "no error in the trial court's ruling." [rec. doc. 1-5, p. 59, *State of Louisiana v. James C. Peirce*, KH 05-00007 (La. App. 3 Cir. 3/1/2005) (unpublished)]. On February 3, 2006, the Louisiana Supreme Court denied writs without comment. [rec. doc. 1-5, p. 60, *State ex rel. James C. Pierce v. State of Louisiana*, 2005-1221 (La. 2/3/2006), 922 So.2d 1171].

Petitioner signed his federal *habeas* petition on July 10, 2006, and the petition was received and filed by the Clerk of this court on July 13, 2006. [rec. doc. 1-9, p. 35]. In this court, petitioner asserts the following claims for relief: (1) erroneous denial of petitioner's motions to recuse Judge Preston Aucoin; (2) the trial court erred in admitting into evidence his first DWI conviction because petitioner was not advised of his right to remain silent at the prior proceeding; (3) the trial court erred in admitting into evidence the blood alcohol test results administered eight hours after the accident; (4) petitioner's convictions for manslaughter and DWI third offense constitute a "double enhancement"; (5) petitioner's sentence was excessive; (6) there was insufficient evidence to support petitioner's manslaughter convictions; (7) the trial court erred in denying petitioner's motion for post-verdict judgment of acquittal; (8) the trial court erred by refusing to allow a special jury instruction regarding riding bicycles on highways and bicycle paths; (9) denial of due process and equal protection as a result of petitioner being tried under

---

[2] Petitioner's original writ application was dismissed without prejudice, but was later reinstated on petitioner's motion. [rec. doc. 1-8, p. 14-15].

L.C.Cr.P. art. 493.2 in effect at the time of trial, rather than article 493, which was in effect at the time of the offense; (10) petitioner's trial for manslaughter and DWI third offense (employing a twelve person jury pursuant to L.C.Cr.P. art. 493.2 in effect at the time of trial) rather than for vehicular homicide, constituted an *ex post facto* application of law; (11) ineffective assistance of counsel due to counsel's failure to obtain and call a "forensic engineer", failure to call witness Christine Clark (regarding road and weather conditions), failure to call "other witnesses", presumably Stacey Guillory, Phil Delafosse and Molly Gautreaux, to dispute petitioner's intoxication, failure to call an expert presumably Dr. Ronald Padgett to opine on petitioner's state of shock as a result of the accident as promised in opening argument, and failure to present a vehicular homicide defense and request a special jury instruction regarding this defense; and (12) petitioner's convictions for manslaughter are unconstitutional because petitioner's third DWI conviction, necessary for a manslaughter conviction, was vacated on direct appeal.

The State has filed an Answer and submitted the state court record for this court's review. [docs. 15 and 16]. Petitioner has filed a Reply. [doc. 17]. This Report and Recommendation follows.

After a full review of the record, the undersigned finds that the grounds asserted for relief are without merit. Accordingly, for the following reasons, it is recommended that the petition be **DENIED AND DISMISSED WITH PREJUDICE.**

## I. Procedural Default

The State argues that petitioner's second, eighth, ninth, tenth and twelfth claims for relief are procedurally defaulted. These arguments are addressed below.

The scope of federal *habeas* review is limited by the intertwined doctrines of procedural default and exhaustion. Procedural default exists where (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, ("traditional" procedural default), or (2) the petitioner fails to properly exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred, ("technical" procedural default). In either instance, the petitioner is deemed to have forfeited his federal *habeas* claim. *Bledsue v. Johnson*, 188 F.3d 250, 254-55 (5th Cir.1999) *citing Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1986) and *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

### Claims 9 and 10

The State asserts that petitioner's ninth and tenth claims for relief, denial of due process and equal protection as a result of petitioner being tried under L.C.Cr.P. art. 493.2 in effect at the time of trial rather than article 493 which was in effect at the time of the offense, and petitioner's trial for manslaughter and DWI third offense, employing a twelve person jury pursuant to L.C.Cr.P. art. 493.2 in effect at the time of trial, rather than

for vehicular homicide, constituted an *ex post facto* application of law, are procedurally defaulted.

In his ninth claim for relief herein, petitioner argues that the criminal conduct forming the basis of his manslaughter and first degree vehicular negligent injuring convictions occurred on May 3, 1997. However, by third amended bill of information filed October 16, 1998, charging petitioner with DWI third offense, two counts of manslaughter and one count of first degree vehicular negligent injuring, petitioner was tried and convicted of all charges by a twelve person jury. On May 3, 1997, Louisiana law did not permit DWI third offense to be joined with manslaughter because the charges were not triable by the same mode of trial (L.C.Cr.P. art. 493), that is, DWI third offense was tried before a six person jury[3] and manslaughter was tried before a twelve person jury.[4]

In July 1997, L.C.Cr.P. article 493.2 was enacted permitting joinder of charges with differing modes of trial to be tried before a twelve person jury, so long as the charges are "based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." L.C.Cr.P. art 493.2; *see also* Acts 1997, No. 559, § 1. Thus, article 493.2 permits joinder of DWI third offense and manslaughter charges for trial before a twelve person jury. Petitioner complains that he

---

[3]A sentence at hard labor is not mandatory; therefore, the offense is triable by a jury composed of six members. La.R.S. 14:98; L.C.Cr.P. art. 782(A).

[4]A sentence at hard labor is mandatory; therefore, the offense is triable by a jury composed of twelve members, ten of whom must concur to render a verdict. La.R.S. 14:31(B); L.C.Cr.P. art. 782(A).

was denied due process and equal protection because the charged offenses were joined and tried to a twelve person jury under article 493.2, the law in effect at the time of trial, rather than the law in effect at time of the offense.

In his tenth claim for relief, petitioner argues that his having been tried for DWI third offense and manslaughter by a twelve person jury under L.C.Cr.P. article 493.2, which was enacted after the commission of the crime, constituted an *ex post facto* violation. Petitioner asserts that in the absence of article 493.2, the State could not have tried him for manslaughter, which required a twelve person jury, but rather the State would have been forced to try him for vehicular homicide, which could have been tried before a six person jury along with the DWI third offense charge. He further asserts that because vehicular homicide carries a lesser maximum sentence than manslaughter, his trial for manslaughter exposed him to a more severe punishment, and that because vehicular homicide has elements which differ from manslaughter and carries an allegedly lesser burden of proof, his trial for manslaughter altered the definition of his criminal conduct and the quantum of evidence necessary to convict him.

The record reveals that during the October 14, 2004 hearing on petitioner's post-conviction application, his retained counsel, Della O. Hayes, waived all but two claims for relief, his claim of ineffective assistance of counsel and his "*ex post facto* claim." [suppl vol. 3, pg. 199-200, 220-222, 251, 259]. During argument on the "*ex post facto* claim", counsel asserted that because the criminal offenses were committed in May 1997, petitioner should have been tried under the joinder rule which was applicable at the time

of the offense, article 493 which required a six person jury for DWI third offense, not the joinder rule applicable at the time of trial, article 493.2, permitting DWI third offense to be tried with the manslaughter charge before a twelve person jury. Thus, counsel asserted that petitioner had been subjected to an improper mode of trial.

Counsel further asserted that had petitioner been tried for DWI third under article 493 before a six person jury, the State would have been required to try petitioner for vehicular homicide, rather than manslaughter, because vehicular homicide could have been tried before a six person jury, while manslaughter could not. Thus, she concluded that petitioner was exposed to greater punishment for his crimes in violation of the *Ex Post Facto* Clause because manslaughter carries a higher maximum penalty than does vehicular homicide. [*Id*. at 199-200, 217-218].

The State responded that it has the authority to decide what charges to bring, and, in this case, the petitioner was charged with, and tried for, manslaughter, not vehicular homicide. Further, the joinder rules, articles 493 and 493.2, are procedural rather than substantive, and as such cannot be the basis for an *ex post facto* violation, as the procedural rule in effect at the time of trial governs. Finally, any claim based on the alleged improper mode of trial was untimely, as petitioner had failed to file a pre-trial motion to quash the allegedly improper joinder of offenses as required by L.C.Cr.P. art 495.[5] [*Id*. at 211-215, 218].

---

[5]Article 495 requires that objections based on misjoinder of offenses "may be urged only by a motion to quash . . . ." Article 532 lists misjoinder of offenses as one of the grounds for filing a motion to quash, specifically stating that in the event of misjoinder, the court can permit the district attorney to sever the counts for trial. L.C.Cr.P. art. 532(3). Article 535 requires that motions to quash based on misjoinder be filed prior to trial in

These arguments, while referred to as petitioner's "*ex post facto* claim", address both petitioner's ninth (due process/equal protection) and tenth (*ex post facto*) claims for relief asserted herein. With respect to this "*ex post facto* claim", the trial court denied petitioner relief on procedural as well as substantive grounds, namely, that petitioner failed to file a pre-trial motion to quash objecting to the allegedly improper joinder of the manslaughter and DWI third offense as required by Louisiana Code of Criminal Procedure article 495 and hence, his claim was untimely; to the extent that the claim presented an *ex post facto* issue, article 493.2 was procedural rather than substantive and therefore no *ex post facto* violation had occurred. [*Id*. at 220].

The Third Circuit found no error in the trial court's ruling and the Louisiana Supreme Court denied writs without comment. *State of Louisiana v. James C. Peirce*, KH 05-00007 (La. App. 3 Cir. 3/1/2005) (unpublished); *State ex rel. James C. Pierce v. State of Louisiana*, 2005-1221 (La. 2/3/2006), 922 So.2d 1171. Accordingly, the last reasoned decision on petitioner's claims clearly and expressly relied on a state procedural rule as one of the basis for its Judgment. *See Harris* and *Sones, infra*.

The "traditional" procedural default doctrine applies to bar federal *habeas corpus* review when a state court declines to address a prisoner's federal claims because the prisoner failed to follow a state procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). When a state court denies relief on

---

accordance with article 521, and that such objections are waived if not timely filed. L.C.Cr.P. art. 535(C) and (D).

both procedural and substantive grounds, application of the procedural default doctrine is not precluded. *Soria v. Johnson*, 207 F.3d 232, 249 (5th Cir. 2000) *citing Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).

Federal courts typically refuse to reach the merits of questions of federal law if the state courts have expressly relied on an "adequate and independent" state procedural ground in refusing to review the claim. "An 'adequate' rule is one that state courts strictly or regularly follow, and one that is applied evenhandedly to the vast majority of similar claims." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir.1997), *cert. denied*, 523 U.S. 1125 (1998) *citing Amos v. Scott,* 61 F .3d 333, 339 (5th Cir. 1995). A state procedural rule enjoys a presumption of adequacy when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id. citing Lott v. Hargett* 80 F.3d 161, 165 (5th Cir.1996). A procedural rule is "independent" when the last state court rendering a judgment in the case "clearly and expressly" indicates that its judgment rests on the procedural ground. *Amos*, 61 F.3d at 338.

The procedural rule relied on by the State satisfies both requirements. Under articles 495 and 535, objections based on misjoinder of offenses are to be raised by pre-trial motion to quash, and the failure to file the motion results in waiver of the objection. L.C.Cr.P. art. 495, 535(C) and (D); *see also* 532(3). Petitioner herein makes no showing that this rule is not strictly or regularly followed, or evenhandedly applied. Thus, the state court procedural rule is presumed "adequate." Indeed, review of published Louisiana

jurisprudence establishes that the Louisiana courts regularly invoke this rule to hold that claims based on improperly joined offenses are waived where no pre-trial motion to quash has been filed. *See State v. Mallett*, 357 So.2d 1105 (La.1978), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 848, 59 L.Ed.2d 41 (1979)[6]*; State v. Collins*, 886 So.2d 1149, 1152 fn.2 (La. App. 5th Cir. 2004) (noting that although the charges were improperly joined, the misjoinder had been waived because the defendant had failed to file a motion to quash and instead moved forward with trial); *State v. Williams*, 2007 WL 3170991, *1 (La. App. 3rd Cir. 2007); *State v. Fuselier*, 954 So.2d 866, 873 (La. App. 3rd Cir. 2007); *State v. Cedars*, 832 So.2d 1191, 1193 (La. App. 3rd Cir. 2002); *State v. Adams*, 884 So.2d 694, 707 (La. App. 3rd Cir. 2004); *State v. Grainer*, 834 So.2d 555, 560-561 (La.App. 4th Cir. 2002); *see also State v. Crochet*, 931 So.2d 1083, 1088 fn. 3 (La. 2006) (noting that in the absence of a timely objection or a showing of prejudice, conviction by unanimous twelve jurors as opposed to six jurors resulting from consolidation of offenses did not require reversal because such error is not a non-waivable jurisdictional defect in the proceedings) *citing State v. Jones*, 922 So.2d 508, 512 (La. 2006) (holding that empaneling a jury of greater than that required by the Louisiana law is not a non-waivable jurisdictional defect subject to automatic reversal).

---

[6]The *Mallett* court found as follows:
The prohibition against misjoinder of offenses and improper consolidation of offenses for trial is grounded on the possible prejudice arising from a single trial on two or more offenses. The defects are not jurisdictional nor do they constitute a denial of due process. Hence, misjoinder of offenses may be waived by the failure to timely assert it by a motion to quash, and improper consolidation of offenses for trial may be waived by the failure to object. La.Code Crim.P. art. 495 (other citations omitted).

Furthermore, the rule is "independent" because the last reasoned judgment on petitioner's claims, that of the trial court, expressly relied on this state procedural rule as a basis for its rejection of petitioner's post-conviction claim.

## Cause and Prejudice/Miscarriage of Justice

This court may therefore refuse to review the merits of these claims unless petitioner demonstrates that he should be excused from application of the procedural default doctrine. This he can do by showing cause and prejudice for the default or by showing that a miscarriage of justice will result from the denial of federal *habeas* review. *See Finley*, 243 F.3d 215, 220-221 (5th Cir. 2001); *Coleman*, *supra; McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Moore v. Roberts*, 83 F.3d 699 (5th Cir.1996); *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); *Sones*, 61 F.3d at 416. *Murray*, 477 U.S. at 496, 106 S.Ct. at 2649; *Glover*, 128 F.3d at 904; *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir.1995); *Callins v. Johnson*, 89 F.3d 210, 213 (5th Cir.1996) *quoting McClesky*, 499 U.S. at 495, 114 S.Ct. at 1471.

In *Murray v. Carrier*, the Supreme Court explained that "cause" requires an impediment external to the defense:

> "[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. Without attempting an exhaustive catalog of such objective impediments to compliance with a procedural rule, we note that a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable, would constitute cause under this standard."

*Id.* at 488, 106 S.Ct. at 2645 (internal citations omitted).

By Order dated October 11, 2006, petitioner was advised by this court that it appeared that several of his claims were procedurally defaulted. Accordingly, petitioner was given an opportunity to demonstrate that federal *habeas* review of his claims was not barred. [rec. doc. 6]. In his response, petitioner sets forth several arguments as to why his claims are not barred by the procedural default doctrine. [rec. doc. 7]. These arguments fail to demonstrate cause for, or otherwise excuse, petitioner's default.[7]

Petitioner argues that Louisiana courts have never applied article 930.4 to any *ex post facto* claim. That article, however, was not the basis for the trial court's ruling; the court's ruling was based on article 495, which requires the filing of a motion to quash. Next, petitioner argues that his claim cannot be procedurally defaulted because the state court denied his claim on both procedural and substantive grounds. However, such dual alternative dispositions do not preclude application of the procedural default doctrine. *See Soria* and *Fisher, supra.* Finally, petitioner argues that because article 930.3(6) lists *ex post facto* violations as an appropriate ground for post-conviction relief, his claim could not properly have been found untimely filed. While, in general, *ex post facto*

---

[7]To the extent that petitioner suggests in his original petition that ineffective assistance of his trial or appellate counsel in failing to file a motion to quash or raise the claim on direct appeal constitutes "cause"for petitioner's default, that claim is without merit. Counsel's ineffectiveness may suffice as "cause" only if that ineffectiveness has been properly presented to, and exhausted in, the Louisiana state court system as a separate and distinct claim for relief. This, was not done in petitioner's case. *See Edwards v. Carpenter*, 529 U.S. 446, 120 S.Ct. 1587 (2000); *Stewart v. LaGrand*, 526 U.S. 115, 120, 119 S.Ct. 1018 (1999); *Carrier*, 477 U.S. at 489.
.

claims may properly be presented during post-conviction proceedings, that general statement of law does not preclude application of the procedural requisites to bringing such a claim. For example, while claims of discrimination in the selection of the grand jury foreperson may be brought in post conviction proceedings under article 930.3(1) as a claim that the conviction was obtained in violation of the Constitution, in the absence of a pretrial motion to quash, such claims are nevertheless deemed procedurally defaulted. *See Williams v. Cain,* 125 F.3d 269, 274-276 (5th Cir. 1997), *Francis v. Henderson,* 96 S.Ct. 1708 (1976), *Pickney v. Cain,* 337 F.3d 542 (5th Cir. 2003). Clearly, claims asserting *ex post facto* violations as a result of alleged misjoinder deserve no different treatment.

Because petitioner has failed to demonstrate cause, the court need not consider whether there is actual prejudice. *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir.1992).

Petitioner also contends that the procedural default doctrine should not bar his claims because he is actually innocent of the crimes of which he was convicted. In order for a *habeas corpus* petitioner to avoid a procedural default by showing a fundamental miscarriage of justice, the petitioner must assert his actual innocence by showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); *Glover*, 128 F.3d at 904. To support such an exception, the petitioner must allege that as a factual matter he did not commit the crime of which he was convicted. *Corwin v. Johnson*, 150 F.3d 467, 473 (5 Cir.1998); *Ward v. Cain*, 53 F.3d 106, 108 (5 Cir.1995). Thus, the petitioner must make a "colorable showing of factual innocence." *Callins v.*

*Johnson*, 89 F.3d 210, 213 (5th Cir.), *cert. denied*, 519 U.S. 1017, 117 S.Ct. 530, 136 L.Ed.2d 416 (1996) *quoting McClesky v. Zant*, 499 U.S. 467, 495, 114 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1993).  Here, petitioner contends that article 493.2 was "a nonexisting statute" at the time of his criminal conduct, and therefore, he was tried, convicted and sentenced under a law which did not exist.  [rec. doc. 7].  Petitioner was convicted of manslaughter (La.R.S. 14:31(A)(2)(a)), DWI third offense (La.R.S. 14:98) and first degree vehicular negligent injuring (La.R.S. 14:39.2), each of which were, and are, existing criminal laws; he was  not convicted of a violation of article 493.2 of the Louisiana Code of Criminal Procedure.  Petitioner, in essence, complains that he is "procedurally innocent".  Petitioner has not shown, however, that, as a factual matter, he is actually innocent of the crimes for which he was convicted, and, thus, he will not suffer a fundamental miscarriage of justice from this court's failure to consider his claims.  Accordingly, petitioner cannot avoid procedural default on grounds of actual innocence.

For these reasons, the undersigned concludes that petitioner's ninth and tenth claims for relief are procedurally defaulted, and must therefore be denied.

**Due Process/Equal Protection**

However, even if petitioner's claims were not procedurally barred, there is no merit to petitioner's arguments.  Petitioner essentially asserts that trying the manslaughter and DWI third offense charges together, before a twelve person jury, denied him his due process right to be tried under the correct mode of trial for DWI third.  The writ of *habeas*

*corpus* is not granted to correct every error committed by a trial court. *Kirkpatrick v. Blackburn,* 777 F.2d 272, 278 (5th Cir.1985). Unless some other constitutional right incorporated into the Fourteenth Amendment by the Due Process Clause is abridged, due process is violated only if trial error has denied the defendant a fundamentally fair trial.[8] A trial is fundamentally unfair only when there is a reasonable probability that the verdict might have been different had the trial been properly conducted. *Id.*

The record establishes that on October 16, 1998, petitioner was charged by third amended bill of information with DWI third offense, two counts of manslaughter and one count of first degree vehicular negligent injuring. [tr. pg. 48-49]. The record further reveals that petitioner was tried by a jury of twelve, who unanimously found him guilty as charged. [tr. pg. 19-21; suppl. vol. 5, sealed exhibits, Confidential Jury Verdict Forms]. It is undisputed that under Louisiana law, manslaughter is properly tried before a twelve member jury. L.C.Cr.P. art 782(A). It is further undisputed that petitioner's conviction for DWI third offense was reversed on double jeopardy grounds.

Initially, the court notes that the Louisiana Supreme Court has held that misjoinder of offenses and improper consolidation of offenses for trial "are not jurisdictional nor do they constitute a denial of due process." *State v. Marcantel*, 357 So.2d 1105, 1109 (La.

---

[8]Petitioner's constitutional right to trial by jury was not abridged by his trial by twelve as opposed to six jurors. The United States Supreme Court has held that the constitutional guarantee to trial by jury in criminal cases does not require any specific number of jurors. *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893 (1970). This is so because the purposes and essential features of the right, that is, a safeguard against corrupt or overzealous prosecutors and compliant and biased or eccentric judges, and an interposition of a commonsense group of laymen between the accused and his accuser who through community participation and shared responsibility determine guilt or innocence, are not a function of the particular number of the body that makes up the jury. *Id*. at 1905-1906.

1978). However, even assuming that petitioner was incorrectly tried for DWI third offense by a jury composed of twelve as opposed to six members, a number greater than that required under Louisiana law for a conviction, that trial error clearly did not deny petitioner a fundamentally fair trial so as to violate petitioner's right to due process. There is no reasonable probability that the verdict in petitioner's case might have been different had the case been tried to a jury of six rather than twelve.

In *State v. Jones*, 922 So.2d 508 (La. 2006), the Louisiana Supreme Court held that error which results from empaneling a jury composed of a greater number of persons than required by law is not a non-waivable jurisdictional defect requiring automatic reversal. *Id.* at 513. Further, based on Louisiana's constitutional and statutory law, the *Jones* court expressly overruled previous cases which could be construed as requiring automatic reversal in such cases.[9] *Id.* Like petitioner herein, Jones had been convicted of DWI fourth by a unanimous twelve member jury. The court rejected his due process argument finding that the error was not fatally prejudicial to the defendant's right to due process because he was not prejudiced by having his case decided by a unanimous jury of twelve. *Id.* To the contrary, the court indicated that conviction by a unanimous twelve member jury provided Jones with greater protection than that required by law. *Id.* Thus, the error was harmless, and Jones' conviction was upheld. *Id.* *See also State v. Crochet*, 931

---

[9]In support of his due process argument, petitioner cites *State v. Marcantel*, 388 So.2d 383 (La. 1980). That case relied exclusively on *State v. Smith*, 367 So.2d857 (La. 1979) as the basis for its holding. However, *Smith* was expressly overruled by *Jones*, and, by implication, so was *Marcantel*. *See Jones*, 922 So.2d at 511; *Crochet,* 931 So.2d at 1088 fn.3.

So.2d 1083, 1088 fn 3 (La. 2006).

In the present case, like the petitioner in *Jones*, petitioner was convicted of DWI third by a unanimous twelve member jury. He was thus provided with greater protection than that required by law. Moreover, like Jones, petitioner was not prejudiced by having his case decided by twelve jurors, a jury twice the size of what the law required, all of whom determined that petitioner was guilty as charged. That petitioner's DWI third conviction was later reversed on other grounds further supports the finding that petitioner suffered no prejudice as a result of his having been found guilty by a unanimous twelve jurors as opposed to six jurors. Any alleged prejudice as a result of improper joinder of the DWI third and manslaughter charges has been mooted, and petitioner cannot demonstrate prejudice from having been tried for manslaughter before a properly constituted twelve member jury. Finally, given the reasoning of *Jones,* any error in the number of jurors empaneled for petitioner's trial was harmless. For these reasons, there is no reasonable probability that the verdict in petitioner's case would have been different had the case been tried to a six member jury.

Petitioner's equal protection claim fares no better. The Equal Protection Clause protects similarly situated people from being treated differently without a rational basis. *Sonnier v. Francis*, 217 Fed.Appx. 410, 411 (5th Cir. 2007) *citing United States v. Abou-Kassem*, 78 F.3d 161, 165 (5th Cir.1996); *Calhoun v. FCI Warden,* 224 Fed.Appx. 333, 334 (5th Cir. 2007) *citing Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120

S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Petitioner has failed to demonstrate that he has

been denied a fundamental right as a result of the alleged improper joinder of charges[10],

that he is a member of a suspect class[11] or that he has been treated differently than

similarly situated defendants. To the contrary, the state reasonably relied upon its rules of

joinder to try petitioner's offenses in the same proceeding, promoting its interest in

judicial economy, consistency of verdicts, speedy trials and avoidance of juror confusion.

Furthermore, to the extent that petitioner asserts an equal protection violation

based on differing treatment between those tried prior to, and those tried after, the

amendment to the joinder rules, "the Supreme Court has explained the widely-accepted

rule that 'the 14th Amendment does not forbid statutes and statutory changes to have a

beginning, and thus to discriminate between the rights of an earlier and later time.'"

*Sonnier v. Quarterman*, 476 F.3d 349, 369 (5th Cir. 2007) *citing Sperry & Hutchinson*

*Co. v. Rhodes*, 220 U.S. 502, 505, 31 S.Ct. 490, 55 L.Ed. 561 (1911). Equal protection is

not a license for courts to judge the wisdom, fairness, or logic of legislative choices. *Id.* at

---

[10]"The Supreme Court has explained that fundamental rights, for equal protection purposes, are such rights as: a right of a uniquely private nature, the right to vote, right of interstate travel and rights guaranteed by the First Amendment." *Sonnier v. Quarterman*, 476 F.3d 349, 368 fn.16 (5th Cir. 2007) *citing Massachusetts Bd. of Retirement v. Murgia*, 96 S.Ct.at 2566.

[11] A suspect class, as used in an equal protection analysis, is one saddled with such disabilities, or subjected to a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *Sonnier*, 476 F.3d at 368 fn.17 *citing Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520 (1976). "Examples of suspect classes are those based upon race, ancestry, or religion." *Id. citing Anderson v. Winter*, 631 F.2d 1238, 1240 (5th Cir.1980).

368 *citing F.C.C. v. Beach Communications, Inc*., 508 U.S. 307, 113 S.Ct. 2096, 2101,

124 L.Ed.2d 211 (1993) and *Ferguson v. Skrupa*, 372 U.S. 726, 729, 83 S.Ct. 1028, 10

L.Ed.2d 93 (1963).

Thus, to establish a valid equal protection claim, discriminatory intent or purpose

is required; discriminatory purpose, in this context, implies that the decision maker

selected or reaffirmed a particular course of action, at least in part, because of its adverse

effects. *Id. citing United States v. Galloway*, 951 F.2d 64, 66 (5th Cir.1992), *Personnel*

*Adm'r v. Feeney*, 442 U.S. 256, 272, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) and *United*

*States v. Crew*, 916 F.2d 980, 984 (5th Cir.1990). Here, petitioner has neither alleged or

demonstrated any invidious purpose on the part of the Louisiana legislature in amending

the criminal joinder rules. Thus, petitioner has failed to establish an equal protection

violation.

### *Ex Post Facto* **Application of Law**

Article I of the United States Constitution provides that neither Congress nor any

State shall pass any "*ex post facto* Law." *See* Art. I, § 9, cl. 3; Art. I, § 10, cl. 1. A law

violates the *Ex Post Facto* Clause if it operates retroactively to (1) make previously

innocent conduct criminal, (2) aggravate a crime, or make it greater than it was, when

committed (3) change or increase the punishment for a crime after its commission, or (4)

alter the legal rules of evidence, and receive less, or different, testimony, than the law

required at the time of the commission of the offense, in order to convict the offender.

*Calder v. Bull*, 3 U.S. 386, 390, 3 Dall. 386, 1 L.Ed. 648 (1798); *Collins v. Youngblood*,

497 U.S. 37 (1990); *Carmell v. Texas*, 529 U.S. 513, 120 S.Ct. 1620 (2000).

The prohibition against *ex post facto* laws, however, does not give a criminal defendant a right to be tried, in all respects, under the law in effect at the time when the crime was committed. *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) *citing Gibson v. Mississippi*, 162 U.S. 565, 590 (1896). The constitutional provision was not intended to limit the legislative control of remedies and modes of procedure which do not affect matters of substance. *Id. citing Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925); *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) *quoting Dobbert*, 432 U.S. at 293 ("[N]o *ex post facto* violation occurs if a change does not alter 'substantial personal rights,' but merely changes 'modes of procedure which do not affect matters of substance.' ").

Thus, the Supreme Court has long held that procedural changes in the law may be applied retroactively without violating the Constitution's ban on *ex post facto* laws. *See Dobbert v. Florida*, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) (change in role of Florida juries in death penalty cases); *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925) (defendant forced to undergo joint rather than separate trials for crimes); *Mallett v. North Carolina*, 181 U.S. 589, 21 S.Ct. 730, 45 L.Ed. 1015 (1901) (state allowed to appeal from intermediate court's award of new trial to defendant); *Thompson v. Missouri*, 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898) (prior to second trial, law was changed to make circumstantial evidence admissible against defendant and he was convicted); *Gibson v. Mississippi*, 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075

(1896) (change in juror qualifications); *see also Lindh v. Murphy*, 521 U.S. 320, 327, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) (noting that if the statute at issue "were merely procedural in a strict sense (say, setting deadlines for filing and disposition . . .), the natural expectation would be that it would apply to pending cases.").  Moreover, the Supreme Court has held that procedural changes, even if they work to the disadvantage of a criminal defendant, do not violate the *Ex Post Facto* Clause. *Collins v. Youngblood*, 497 U.S. 37 (1990); *Dobbert*, 432 U.S. at 293.  *See also Creel v. Kyle*, 42 F.3d 955, 958 (5th Cir.1995).

Initially, the undersigned notes that the premise for petitioner's *ex post facto* claim is faulty.  Petitioner asserts that in the absence of L.C.Cr.P. article 493.2, the State would have been forced to try him for vehicular homicide.  That is simply not the case.  Had the State not been able to join the manslaughter with DWI third offense for a single trial, it could have severed the counts and proceeded with either offense separately as contemplated by L.C.Cr.P. article 532(3), or it could have chosen to try petitioner solely for manslaughter, proving that petitioner was guilty of DWI third offense when he struck and killed both children under the felony-manslaughter doctrine.  The State would not have been forced to try petitioner with vehicular homicide as petitioner suggests.  Therefore, petitioner's arguments regarding the lesser penalty, differing elements and allegedly lesser burden of proof for vehicular homicide as opposed to manslaughter, the crime with which the State chose to charge and try petitioner, do not set forth a claim

under the *Ex Post Facto* Clause.

To the extent that petitioner argues that an *ex post facto* violation resulted from his having been tried before a twelve member jury under L.C.Cr.P. article 493.2, as opposed to a six member jury under L.C.Cr.P. article 493, the state court correctly found that this claim does not implicate the *Ex Post Facto* Clause because the change in law was procedural rather than substantive. Article 493.2 is a procedural rule that does not affect matters of substantive law. Specifically, this article does not make previously innocent conduct a crime, it does not increase the punishment for, nor change the essential elements of, the charged offense, nor does the article change the ultimate facts the State must prove to establish guilt, nor lower the burden of proof to obtain a conviction. Accordingly, the application of article 493.2 to petitioner's criminal conduct did not constitute a prohibited retroactive application of law, and, as such, petitioner has stated no viable *ex post facto* claim.

Further, under the applicable standard of review, petitioner is not entitled to federal *habeas corpus* relief. Although, under prior Supreme Court precedent, a law resulting in a retroactive change in jury size may have constituted an *ex post facto* violation, the Supreme Court has overruled its prior precedent. In *Thompson v. Utah*, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1898), the Supreme Court held that a state law which lowered the size of the jury in a non-capitol case to eight, from twelve jurors, after the commission of the defendant's crime, was an *Ex Post Facto* Clause violation.

However, in *Collins v. Youngblood*, 497 U.S. 37, 51-52, 110 S.Ct. 2715, 111 L.Ed. 30 (1990), the Court expressly overruled *Thompson,* finding that a law which changed the number of jurors could Constitutionally be applied retroactively without offending the *Ex Post Facto* Clause. The *Youngblood* Court reasoned that although "the right to a jury trial is obviously a 'substantial' one, . . . it has [nothing] to do with the definition of crimes, defenses, or punishments, which is the concern of the *Ex Post Facto* Clause." *Youngblood,* 497 U.S. at 51.

Accordingly, in light of *Youngblood*, and in the absence of a Supreme Court decision holding that trial before a six, as opposed to a twelve, member jury violates the *Ex Post Facto* Clause, the undersigned cannot find that the Louisiana courts' rejection of petitioner's *ex post facto* claim was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

### Claim 2

The State also contends that petitioner's second claim for relief, that is, that the trial court erred in admitting into evidence his first DWI conviction because petitioner was not advised of his right to remain silent at the prior proceeding, is procedurally defaulted. The State asserts that this court may not review the merits of this claim because the state appellate court found that the claim was not properly before the court because counsel had not previously properly presented the arguments made to the appellate court to the trial court. The undersigned agrees.

27

Review of the record reveals that the Louisiana Third Circuit Court of Appeal found that petitioner's second claim for relief was not properly before that court because petitioner had failed to properly raise his claim in the trial court. *State v. Pierce*, 799 So.2d732, 741-744 (La. App. 3rd Cir. 2001). More specifically, the Third Circuit found that in the trial court petitioner failed to argue that his first DWI conviction was invalid because petitioner was not advised of his right to remain silent (*Id*. at 743) and, with respect to both the first and second DWI proceeding, failed to raise an objection on grounds that he was not advised that the enhancement process could lead to a manslaughter conviction. *Id*. at 743-744.

Under Louisiana law, appellate courts will not consider an issue raised for the first time in the appellate court if the issue was not pled, urged, or addressed in the court below. *Nodier v. Ungarino & Eckert, LLC,* 2007 WL 1300805, *3 (La. App. 1st Cir. 2007) *citing Johnson v. State,* 2002-2382, p. 4 (La.5/20/03), 851 So.2d 918, 921, *Geiger v. State ex rel. Department of Health and Hospital,* 2001-2206, p. 11 (La.4/12/02), 815 So.2d 80, 86, *Jackson v. Home Depot, Inc.,* 2004-1653, pp. 6-7 (La.App. 1 Cir. 6/10/05), 906 So.2d 721, 725, *Hudson v. East Baton Rouge Parish School Board*, 2002-0987, p. 3 (La.App. 1 Cir. 3/28/03), 844 So.2d 282, 285, *Mobil Exploration & Producing U.S. Inc. v. Certain Underwriters Subscribing to Cover Note 95-3317(A),* 2001-2219, p. 36 (La.App. 1 Cir. 11/20/02), 837 So.2d 11, 41, *writ denied,* 2003-0418 (La.4/21/03), 841 So.2d 805, *writs denied*, 2003-0417, 2003-0427, 2003-0438 (La.5/16/03), 843 So.2d

1129, 1130 and Uniform Rules-Courts of Appeal, Rule 1-3; *Walston v. Lakeview Regional Medical Center,* 768 So.2d 238, 242-243 *citing Fried v. Bradley*, 52 So.2d 247, 257 (La. 1951); Uniform Rules-Courts of Appeal, Rule 1-3.

By Reply, petitioner admits that "the state court did decide this claim was not properly before the court . . . ." He nevertheless asserts that because the state court also reached the merits, his procedural default should be excused. [rec. doc. 17]. However, when a state court denies relief on procedural grounds and alternatively reaches the merits, federal *habeas* review is precluded unless petitioner establishes cause for the default and actual prejudice. *Soria v. Johnson*, 207 F.3d 232, 249 (5th Cir. 2000) *citing Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999). Because petitioner demonstrates neither cause nor prejudice, nor that denial of federal *habeas* review will result in a fundamental miscarriage of justice, this claim is likewise procedurally barred.

### Claims 8 and 12

The State also contends that petitioner's eighth and twelfth claims are "technically" procedurally defaulted because these claims were withdrawn by counsel at the October 14, 2004 evidentiary hearing on petitioner's post-conviction application and, hence, were never ruled on by the lower court and were not properly raised in the state appellate courts. For the following reasons, the undersigned finds that the State's position is well taken. Accordingly, these claims are subject to dismissal with prejudice because these claims are procedurally barred.

It is well settled that a petitioner seeking federal *habeas corpus* relief cannot collaterally attack his state court conviction in federal court until he has exhausted available state remedies. 28 U.S.C. § 2254(b)(1)(A); *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Minor v. Lucas*, 697 F.2d 697 (5th Cir. 1983); *Mercadel v. Cain,* 179 F.3d 271, 275 (5th Cir. 1999); *Fisher v. Texas,* 169 F.3d 295, 302 (5th Cir.1999); *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir.1998). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal claim to each level of the state court in order to allow the state courts the initial opportunity to correct federal constitutional violations. *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001); *Baldwin v. Reese*, 541 U.S. 27, 124 S.Ct. 1347, 1349 (2004).

Moreover, the exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's highest court, in a procedurally proper manner, even when review by that court is discretionary. *O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728 (1999); *Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998) *citing Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985); *Mercadel,* 179 F.3d at 275 *citing Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir.1988).

When a petitioner has raised a claim in a procedural context "in which its merits will not be considered," he has not "fairly presented" the claim to the state courts and, accordingly, has not satisfied the exhaustion doctrine. *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989); *Satterwhite v. Lynaugh*, 886 F.2d 90,

92-93 (5th Cir.1989). In Louisiana, the highest court is the Louisiana Supreme Court. Thus, in order to properly exhaust a claim, a federal *habeas corpus* petitioner must have fairly presented the substance of his claim in a procedurally correct manner to the Louisiana Supreme Court.

A petitioner has "technically exhausted" his claims if he fails to properly and timely present them to each level of the Louisiana courts and is thereafter time-barred from seeking relief in those courts. *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir.1998) *citing Coleman v. Thompson*, 501 U.S. 722, 731-33, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1986) and *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir.1995); *Coleman*, 501 U.S. 732, 735 fn. 1; *Bledsue*, 188 F.3d at 254-55; *Fuller v. Johnson*, 158 F.3d 903, 905-06 (5th Cir.1998). In such a case, however, there is no difference between non-exhaustion and procedural default. *Magouirk*, 144 F.3d at 358. Accordingly, when a petitioner fails to exhaust state court remedies because he has allowed his federal claims to lapse, those claims are "technically" procedurally defaulted. *Id.*

Review of the record of these proceedings reveals that after petitioner filed his application for post-conviction relief, petitioner retained attorney Della O. Hayes to represent him in post-conviction proceedings. [suppl. vol. 3, pg. 139-140]. At the October 14, 2004 hearing on petitioner's post-conviction application, Hayes withdrew petitioner's eighth and twelfth claims for relief, to wit, that the trial court erred by refusing to give a special jury instruction regarding riding bicycles on highways and

bicycle paths and that petitioner's convictions for manslaughter were unconstitutionally obtained because petitioner's third DWI conviction, necessary for a manslaughter conviction, was vacated on direct appeal. [suppl vol. 3, pg. 199-200, 220-222, 251, 259].

Although petitioner contends that he informed the court at the hearing that he was not abandoning the other claims raised in his post-conviction application, the record refutes this allegation. Petitioner did not object to his counsel's waiver of these claims. To the contrary, petitioner stated that he did not wish to abandon the claims presented in his *pro se* "Combined Motions to Correct Illegal and Invalid Sentences" filed pursuant to Louisiana Code of Civil Procedure articles 882 and 872 based on alleged irregularities in the grand jury and its minutes, of which his retained counsel was unaware. [*Id.* at 260-266, 262; 21-27]. However, after discussion of those claims with the court, his retained counsel and inmate counsel[12], petitioner himself withdrew the claims presented in that pleading. [*Id.* at 263-278, 277].

In light of the above, it is clear that petitioner's eighth and twelfth claims for relief, both of which were presented to the trial court in petitioner's post-conviction application, were never argued nor ruled on by the trial court, as those claims were withdrawn by petitioner's retained counsel. Although these claims were included in petitioner's *pro se* writ applications to the Louisiana Third Circuit Court of Appeal and the Louisiana Supreme Court, those claims were not properly raised in the appellate courts; there was

---

[12]Inmate counsel was not an attorney licenced to practice law in Louisiana, and hence, was not permitted to appear before the court. [suppl vol 3, pg. 194-197].

no ruling by the trial court on those claims for the appellate courts to review. In essence, petitioner chose to by-pass the trial court's review, instead opting to seek a decision directly in the Louisiana appellate courts. This he may not do.

Under Louisiana law, the various Courts of Appeal have supervisory jurisdiction over cases which arise within their circuits. LSA Const. Art. 5, § 10(a). Likewise, the Louisiana Supreme Court has supervisory jurisdiction over the courts of appeal. LSA Const. Art. 5, § 5. However, absent a change in the applicable law, appellate courts do not consider claims which were not properly raised in, and addressed by, the lower court. *See Fried v. Bradley*, 52 So.2d 247, 257 (La. 1951); *Segura v. Frank*, 630 So.2d 714, 725 (La. 1994); *See also Nodier v. Ungarino & Eckert,* 2007 WL 1300805, *3 (La. App. 1st Cir. 2007) (and cases cited therein, *supra.*); Uniform Rules-Courts of Appeal, Rule 1-3 (limiting appellate review to "only issues which were *submitted* to the trial court . . . .").

While this rule may seem harsh, the rule preserves the proper allocation of functions between the lower courts and the appellate courts, assigning initial decision of the claim to the trial court, first review of the lower court's decision to the court of appeal and discretionary review of the decision of the lower and intermediate appellate court to the Louisiana Supreme Court. The purpose of the rule would be thwarted if a litigant, like petitioner here, was able to waive some, but not all, of his claims in the trial court and then, after an unfavorable result on the claims on which a decision by the trial court was sought, the litigant could urge the previously waived claims in the appellate courts in

hopes of gaining a favorable decision. Petitioner's claims remain unexhausted.

Further, while petitioner argues that he should not be bound by the actions of his retained post-conviction counsel because the record does not disclose that he knowingly and intelligently waived his constitutional rights, that claim is without merit. There is no Sixth Amendment right to assistance of counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990 (1987). Once a person is represented by counsel of his own choosing, he is bound by his attorney's actions and decisions. *Link v. Wabash R. Co.,* 370 U.S. 626, 633-634, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Further, counsel is not required to raise every conceivable argument urged by his client, regardless of merit. *See Smith v. Robbins,* 528 U.S. 259, 288 (2000) (dealing with appellate counsel); *Jones v. Barnes,* 463 U.S. 745, 749, 103 S.Ct. 3308 (1983) (same); *Ellis v. Lynaugh,* 873 F.2d 830, 840 (5th Cir.1989) (same). It is counsel's duty to choose among potential issues, according to her judgment as to their merits and the tactical approach taken. *Jones,* 463 U.S. at 749; *Ellis*, 873 F.2d at 840. Accordingly, petitioner is bound by his counsel's waiver of his claims raised in post-conviction proceedings.

Since petitioner failed to properly present his federal *habeas corpus* claims to the Louisiana Third Circuit Court of Appeal and the Louisiana Supreme Court, those claims remain unexhausted, and for purposes of federal *habeas corpus* review, because it is unlikely that petitioner can now meet the exhaustion requirement, those claims are

"technically" procedurally defaulted.[13]  *See Wilder; O'Sullivan*; *Magouirk; Richardson;*

*Mercadel; Dupuy; Coleman; Sones; Bledsue; and Fuller, supra.*

Because petitioner's claims are technically procedurally defaulted, this court may

refuse to review the merits of these claims unless petitioner demonstrates that he should

be excused from application of the procedural default doctrine by showing cause and

prejudice for the default or that a miscarriage of justice will result from the denial of

federal *habeas* review. *See Finley*, 243 F.3d at 220-221; *Coleman, supra; McCleskey v.*

*Zant*, 499 U.S. 467, 111 S.Ct. 1454 (1991); *Moore v. Roberts,* 83 F.3d 699 (5th Cir.

1996); *Gray v. Netherland,* 518 U.S. 152, 116 S.Ct. 2074 (1996);  *Sones*, 61 F.3d at  416.

*Murray,* 477 U.S. at 496, 106 S.Ct. at 2649; *Glover,* 128 F.3d at 904; *Ward v. Cain,* 53

F.3d 106,108 (5th Cir. 1995); *Callins v. Johnson,* 89 F.3d 210, 213 (5th Cir.1996) *quoting*

*McClesky,* 499 U.S. at 495,114 S.Ct. at 1471.

Petitioner has been placed on notice that the procedural default doctrine might be

applicable to the instant claims and was given an opportunity to present valid reasons why

his claims are not subject to the procedural default doctrine, and more specifically, an

opportunity to demonstrate both "cause" for his default and "prejudice". [rec. doc. 6].

However, petitioner has failed to demonstrate cause for his default on these claims.[14]

---

[13] *See* La.C.Cr.P. art. 930.8 providing a two year limitation period for filing applications for post-conviction relief.

[14] To the extent that petitioner's argument that he should not be bound by Ms. Hayes waiver of his claims may be construed as an argument that he received ineffective assistance of counsel during post-conviction proceedings, that claim is without merit. [*see* rec. doc. 7-1, pg. 5].  Because petitioner has no constitutional right to an attorney in state post-conviction proceedings, he cannot claim ineffective assistance of counsel in such

35

Accordingly, this court will not consider whether there is actual prejudice. *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992). Further, as discussed above, petitioner has failed to demonstrate that as a factual matter that he is actually innocent of the crimes of which he was convicted. Therefore, he has failed to demonstrate that a miscarriage of justice will result from the denial of federal *habeas* review

Accordingly, the undersigned finds that petitioner's eighth and twelfth claims, that the trial court erred by refusing to allow a special jury instruction regarding riding bicycles on highways and bicycle paths, and that petitioner's convictions for manslaughter are unconstitutional because petitioner's third DWI conviction, necessary for a manslaughter conviction, was vacated on direct appeal, respectively, are procedurally defaulted. Therefore, this court is precluded from reviewing the merits of these claims.

## II. Merits Review

### *Standard of Review*

This *habeas* petition was filed on July 8, 2005, therefore the standard of review is set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA). *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir. 2000);

---

proceedings. *Matchett v. Dretke*, 380 F.3d 844, 849 (5th Cir. 2004) *citing Martinez v. Johnson*, 255 F.3d 229, 239 (5th Cir.2001) and *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Further, his counsel was retained.

*Orman v. Cain,* 228 F.3d 616, 619 (5th Cir. 2000).[15] AEDPA substantially restricts the scope of federal review of state criminal court proceedings in the interests of federalism, comity, and finality of judgments. *Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000) *citing Teague v. Lane,* 489 U.S. 288, 306, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000)[16] (noting that AEDPA "placed a new restriction on the power of federal courts to grant writs of *habeas corpus* to state prisoners.").

Title 28 U.S.C. § 2254(d) as amended, states as follows:

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[15]Before enactment of AEDPA, "a federal court entertaining a state prisoner's application for *habeas* relief . . . exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact). In other words, a federal *habeas* court owed no deference to a state court's resolution of such questions of law or mixed questions." *Montoya* , 226 F.3d at 403-04 *citing Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) and 28 U.S.C. S 2254(d) (West 1994).

[16]Justice O'Connor delivered the opinion of the Court with respect to the standard of review, while Justice Stevens delivered the opinion of the court with respect to other aspects of the opinion which have no bearing on the issues herein. Accordingly, the undersigned will refer to Justice Steven's opinion as a concurring opinion.

Under the deferential scheme of § 2254(d), as amended, this court must give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

A *habeas* petitioner has the burden under AEDPA to prove that he is entitled to relief. *Ormon*, 228 F.3d at 619 *citing Williams,* 120 S.Ct. at 1518, and *Engle v. Isaac*, 456 U.S. 107, 134-35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Under § 2254(d), as amended, "[t]he federal courts no longer have a roving commission to discern and "correct" error in state court proceedings, but must exercise a more limited review . . ." *Grandison v. Corcoran*, 78 F.Supp.2d 499, 502 (D. Md. 2000). Federal courts may not grant the writ merely on a finding of error by a state court or on a finding of mere disagreement with the state court. *Montoya,* 226 F.3d at 404; *Orman,* 228 F.3d at 619.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) *citing Williams,* 120 S.Ct. at 1523; *Montoya,* 226 F.3d at 403-04 *citing*

*Williams*, 120 S.Ct. at 1523. "The 'contrary to' requirement 'refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Dowthitt* , 230 F.3d at 740 *citing Williams*, 120 S.Ct. at 1523.

Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt,* 230 F.3d at 741 *citing Williams,* 120 S.Ct. at 1523. The standard is one of objective reasonableness. *Montoya,* 226 F.3d at 404 *citing Williams,* 120 S.Ct. at 1521-22. A federal *habeas* court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . [r]ather, that application must also be unreasonable." *Williams,* 120 S.Ct. at 1522.

Section 2254(d)(2) speaks to factual determinations made by the state courts. *Dowthitt,* 230 F.3d at 741. Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. *Id.* Thus, this court must defer to the state court's decision unless it was based on an unreasonable determination of the facts in light of the record of the State court proceeding. *Id. citing* 28 U.S.C. § 2254(d)(2); *Knox,* 224 F.3d at 476 *citing Chambers v. Johnson,* 218 F.3d 360, 363 (5th Cir.2000).

***Denial of Motion to Recuse the Judge (Claim 1)***

Petitioner argues that state court trial judge, Judge Preston Aucoin, should have been recused from petitioner's criminal case because, as a trial attorney, Aucoin was involved in a civil collection case against petitioner, which he did not immediately remember, and that the state court's denial of his motions to recuse Judge Aucoin were therefore erroneously denied. Petitioner argues this claim under Louisiana state law, namely, as a violation of La.C.Cr.P. article 671, governing recusal of judges.

28 U.S.C. § 2254(a) provides that federal courts "shall entertain an application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgement of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Thus, when reviewing applications for *habeas corpus*, federal courts will only review allegations of deprivations of federal constitutional rights. *Deters v. Collins*, 985 F.2d 789, 791 fn. 1 (5th Cir. 1993) *citing* 28 U.S.C. § 2254(a). Accordingly, "[a] federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 480 (1991). Therefore, "a 28 U.S.C. § 2254 applicant must claim violation of a federal constitutional right." *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998). This is so because federal courts "do not sit as a super state supreme court . . . ." *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983). It is not the province of a federal *habeas* court to determine if the state courts properly applied state law. *Estelle v.*

*McGuire*, 502 U.S. at 68, 112 S.Ct. at 480; *Narvaiz*, 134 F.3d at 695. Rather, "[f]ederal habeas corpus review is limited to errors of constitutional dimension . . . ." *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998).

Review of petitioner's filings in this court reveals that petitioner does not raise his recusal claim under federal law, nor, under the United States Constitution. There is no mention or argument of any federal constitutional issue or any federal law supporting such a claim. Petitioner does not cite any Amendment to the United States Constitution nor any cases directly construing the Constitution in support of this claim. Rather, this issue is raised solely on state law grounds. Petitioner argues a violation of Louisiana Code of Criminal Procedure article 671(A) (1) and (6) because of Judge Aucoin's alleged involvement in a prior civil collection case against petitioner and the Judge's alleged lack of candor when faced with this allegation.[17] For this reason, petitioner's recusal claim is not cognizable on federal *habeas* review and should be dismissed.

Moreover, even if petitioner's recusal claim could be construed as a claim under the Due Process Clause and hence, as cognizable on federal *habeas* review, this court must defer to the state appeals court's decision on the merits unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or that decision "was based on an

---

[17]Likewise, in the Louisiana state courts, petitioner presented no federal constitutional issue. Hence, the Louisiana Third Circuit Court of Appeal, the last state court to render a decision on the merits of petitioner's claim, analyzed this claim under Louisiana standards. *See State v. Pierce*, 799 So.2d 732, 736-741 (La. App. 3rd Cir. 2001).

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). Petitioner has made no argument to this effect. Thus, because petitioner has not demonstrated that the state appeals court's decision was contrary to, or an unreasonable application of, the Supreme Court's jurisprudence, and has not demonstrated that the decision was an unreasonable determination of the facts in light of the evidence presented in the State court proceeding, under the applicable standard of review, petitioner's claim does not warrant federal *habeas corpus* relief. *See Smith v. Cain,* 253 F.3d 700 (5th Cir. 2001) (unpublished).

Finally, petitioner's claim fails on the merits, notwithstanding the applicable standard of review. It is well settled that under the Due Process Clause of the Constitution, the accused in any criminal trial is guaranteed the right to a fair and impartial tribunal. *Nethery v. Collins*, 993 F.2d 1154, 1157 (5th Cir. 1993); *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625 (1955); *Bracy v. Gramley*, 520 U.S. 899, 905, 117 S.Ct. 1793, 1797 (1997). However, the Due Process Clause establishes a constitutional floor, not a uniform standard. *Gramley*, 520 U.S. at 904-905. Accordingly, a trial judge's disqualification under a state statute or code of judicial conduct do not ordinarily implicate the constitution. *Id.; Fero v. Kerby*, 39 F.3d 1462, 1479-1480 (10th Cir. 1994); *Dyas v. Lockhart*, 705 F.2d 993, 997 (8th Cir. 1983); *Nichols v. Scott*, 69 F.3d 1255, 1277 (5th Cir. 1995) *citing United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990) (noting that the federal statutory disqualification standard is "more demanding than that

required by the Due Process Clause . . . ." Thus, conduct violative of the statute may not constitute a due process deficiency).

To secure *habeas* relief on this basis, the petitioner must "establish that a genuine question exists concerning [the judge's] impartiality.*" Bigby v. Dretke,* 402 F.3d 551, 559 (5th Cir. 2005) *citing Liteky v. United States*, 510 U.S. 540, 552, 114 S.Ct. 1147 (1994). There must be an appearance of impropriety which rises to the level of a fundamental defect resulting in a complete miscarriage of justice; absent that level of severity, *habeas* relief is not cognizable. *Couch*, 896 F.2d at 81. Bias is not lightly established because ordinarily courts "presume that public officials have properly discharged their official duties." *Bigby,* 402 F.3d at 558 *citing Valley v. Rapides Parish School Board*, 118 F.3d 1047, 1052 (5th Cir. 1997) and *Bracy,* 520 U.S. at 909. Petitioner's claims of impartiality, bias or prejudice are premised on (1) Judge Aucoin's alleged involvement in a civil collection proceeding against petitioner in which he apparently represented a long-standing corporate client for whom he obtained a $2,600 default judgment against petitioner twenty years earlier, one of hundreds of judgments Aucoin obtained for that client during his career as a practicing attorney, and (2) his having filed a judgment debtor rule against petitioner in another case, seventeen years earlier, in an attempt to collect a judgment obtained by other counsel while petitioner was in bankruptcy proceedings. This record, does not support a constitutional basis for this claim.

Petitioner has not demonstrated that Judge Aucoin issued any adverse, biased or prejudicial rulings, or demonstrated that Judge Aucoin took any actions or inactions against him which could be said to be even remotely related to the collection actions against petitioner. Petitioner cites his original sentencing hearing as evidence of the Judge's bias or prejudice. However, petitioner was found guilt by a jury. After the jury determined petitioner's guilt, Judge Aucoin sentenced petitioner within the statutorily authorized range, taking into account the facts contained in petitioner's pre-sentence investigation, his callous disregard for the victims' families, his attempt to drive away from the scene of the crime despite the child trapped under his car, the risk that petitioner would commit another crime if his sentence was suspended and the seriousness of the crimes of which petitioner was convicted. [suppl. vol. 1, pg. 915-921]. Thus, while Judge Aucoin used strong language in imposing petitioner's sentence, the record does not support petitioner's position. Frankly, the strong language was warranted by the facts.

Finally, the Judge contested petitioner's allegations, testifying that he had no recollection of Pierce until he conducted further investigation, and that, in any event, his earlier representation of the corporate client against Pierce would not have affected any of his decisions in petitioner's criminal case. [tr. pg. 76-78, 81-82]. Further, although Aucoin apparently presided over petitioner's guilty plea to third offense DWI, and although petitioner may have appeared before Aucoin previously, given the number of criminal matters before District Judges, Judge Aucoin's failure to recall petitioner does

not suggest any impropriety on Aucoin's part, nor does his failed recollection rise to the level of a fundamental defect resulting in a complete miscarriage of justice.

Thus, other than petitioner's self-serving allegations suggesting that he was denied his right to a fair and impartial tribunal, there is insufficient evidence of Judge Aucoin's alleged impartiality, bias or prejudice to support a claim under the constitutional standard. Accordingly, petitioner is not entitled to federal *habeas* relief with respect to this claim.

### *Admission of Blood Alcohol Test Results (Claim 3)*

Petitioner argues that the trial court erred in admitting the results of a blood alcohol test performed eight hours after the accident. Petitioner contends that although the test indicated that petitioner's blood alcohol level was .110 grams, over the legal limit for intoxication, the test had no probative value given the delay in administration of the test. Petitioner further contends that the test was not valid because there was no testimony regarding the repair, maintenance, inspection, cleaning, certification or chemical accuracy of the testing, even though the admission of the test result created a mandatory statutory presumption of intoxication.

The State responds that the test result went to the weight of the evidence and that it had probative value, given that the result was contrary to a statement given by petitioner to police at the station after the accident, and was consistent with eyewitness accounts of petitioner's condition prior to, and at the time of, the accident, thus discounting petitioner's version of events. Hence, the blood alcohol test result was properly admitted

at trial.

This claim was extensively discussed and rejected by the Louisiana Third Circuit Court of Appeal. *State v. Pierce,* 799 So.2d 732 (La.App. 3rd Cir. 2001). That court found that the blood alcohol test result was properly admitted. The court initially found that the State did not rely on the statutory presumption of intoxication at trial, citing the prosecutor's opening statement and closing and rebuttal argument wherein he conceded that the test was not determinative and that, although he did not give a lot of weight to the test, the jury would have to decide how much weight they would give the evidence. *Id.* at 745-746.

The court also found that the State proved intoxication by independent evidence, namely, the testimony of Bobby Taylor and Kenneth Clark who were with petitioner immediately before the accident, the mother, father and relative (John Goodman) of the two dead children, as well as Robert Manuel, who came upon the accident scene to render aid, all of whom confirmed that petitioner appeared to be highly intoxicated, and the testimony of Lieutenant Dwayne Fontenot who took petitioner's statement after the accident.[18] Since the State did not rely on the statutory presumption of intoxication based on blood alcohol level, the evidence was admissible without presentation of evidence of repair, maintenance or cleaning of the machine. *Id.* at 747.

---

[18] In that statement, petitioner stated that he had only one beer to drink before the accident and then drank three or four sixteen ounce beers at his home after the accident. A search of petitioner's home resulted in only one twelve ounce beer can being found. *Id.* at 746-747.

Based on the above, the court also found that the blood alcohol test result was relevant for a purpose other than showing intoxication at the time of the offense because it showed that petitioner had been drinking at some point prior to the accident and that he had not consumed large quantities of alcoholic beverages while at his home. *Id*. at 746-747. Further, the court found that the probative value of the test result outweighed any prejudicial effect resulting from its admission. *Id*. at 747.

Finally, the court rejected petitioner's argument that the admission of the test combined with the prosecutor's arguments and jury instruction created an unconstitutional presumption that relieved the State of its burden of proof. The cited arguments and instruction were neither improper nor confusing, and, as such, could not have been interpreted as creating a mandatory presumption of intoxication. *Id*. at 747-748.

For the following reasons, the undersigned finds that the state court's decision should not be disturbed. The state court decision was not contrary to, nor an unreasonable application of, federal law, nor was the decision an unreasonable determination of the facts in light of the state court record. Accordingly, petitioner is not entitled to federal *habeas* relief with respect to this claim.

The admissibility of evidence is a matter of state law entrusted to the discretion of the trial court. *Beathard v. Johnson,* 177 F.3d 340, 347 (5th Cir.1999). Accordingly, federal courts will not grant *habeas* relief for errors in a trial court's evidentiary rulings

unless those errors result in a "denial of fundamental fairness" under the Due Process Clause. *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) *citing Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir.1983), *cert. denied*, 466 U.S. 984, 104 S.Ct. 2367, 80 L.Ed.2d 838 (1984). The erroneous admission of prejudicial evidence will justify *habeas* relief only if the admission was a crucial, highly significant factor in the defendant's conviction. *Id.*

Here, the trial court committed no error, much less any error creating fundamental unfairness, in admitting the blood alcohol test results. Under Louisiana law, the State may rely on the statutory presumption of intoxication set forth in La.R.S. 32:662(A)(1)(c), admitting a blood alcohol test obtained in accordance with statutory requisites (La.R.S. 32:661-666), or it may demonstrate intoxication by presentation of other evidence to prove that the defendant/operator was under the influence of alcoholic beverages, including blood alcohol evidence other than that obtained in conformity with the statutory mandates. La.R.S. 14:98(A)(1)(a) and (b); *State v. McElroy*, 553 So.2d 456, 458 (La. 1989) *citing State v. Jones*, 316 So.2d 100, 105 (La. 1975).

In cases where the State does not rely on the statutory presumption, it need not present evidence of the accuracy or condition of the machine used to administer the test or the qualifications of the operator of that machine as required by statutory and jurisprudential mandates. *McElroy*, 553 So.2d at 457-458 *citing State v. Rowell*, 517 So.2d 799 (La.1988) Intoxication may be proved by any admissible evidence, including testimony of "arresting officers and others which relate indicia of intoxication discernible

48

by the senses of sight, sound, or smell." *McElroy*, 553 So.2d at 458 *quoting Jones*, 316 So.2d at 105.

As found by the Third Circuit Court of Appeal, the record reveals that the State did not rely on the statutory presumption of intoxication. To the contrary, the prosecutor repeatedly told the jurors that he would prove that Pierce was under the influence of alcohol through testimony of the witnesses, and that the test was not determinative. The prosecutor conceded that the State "ha[d] a problem with the test [because] the test was taken about eight hours after the accident" and that "a breath test eight hours [after the accident] is not determinative", going so far as stating that "the State does not give a lot of weight to that test." He further told the jurors that the State "proved . . . that [Pierce] was intoxicated at the time he was operating [his vehicle], common sense . . . [w]e don't need a test . . . [w]e never needed the test . . . ." [tr. pg. 549-550, 554, 812-815, 817, 818-820, 834-837, 837].

Moreover, as recognized by the Third Circuit, the record reflects that the State did in fact present overwhelming independent evidence that petitioner was under the influence at the time of the accident; this evidence was elicited from both police officers and lay witnesses who observed, heard and smelled petitioner immediately before and at the scene of the accident. That evidence was summarized as follows:

> At trial, Bobby Taylor, a friend of the Defendant, testified that he was at his mother's house with the Defendant immediately before the wreck and that the Defendant was intoxicated. He testified that the Defendant did not know where he was and twice inquired about his location. According to Mr. Taylor, the Defendant had slurred speech and when he left, was driving in

an unsafe manner. Taylor further testified that he saw the Defendant and Kenneth Clark smoke a marijuana cigarette while he was at Taylor's house.

Mr. Clark testified that he drank a beer or two and smoked a joint with the Defendant right before the accident. According to Mr. Clark, the Defendant did not know where he was and his speech was slurred. He confirmed Taylor's testimony that the Defendant twice asked where he was. Clark and the Defendant shared a marijuana cigarette and each took about eight or ten hits. Mr. Taylor and Mr. Clark both thought the Defendant was too drunk to be driving and Mr. Clark refused an invitation to ride with the Defendant in his car. Mr. Clark testified that approximately twenty minutes after the Defendant left, they heard ambulances.

The mother of the two dead boys testified that when she arrived on the scene of the accident, the Defendant smelled of alcohol, his eyes were yellow and he was unsteady and unbalanced. Their father testified that he too smelled alcohol on the Defendant and that the Defendant had slurred speech and had to lean against something to stand up.

John Goodman, a relative of the deceased victims, testified that when he came upon the scene, the Defendant smelled of alcohol and was drunk. He had seen the Defendant drinking earlier in the day. Also, Robert Manuel, who also went to the scene to render aid to the victims, testified that the Defendant was leaning up against the car and did not offer any assistance when they lifted the car to free the child trapped beneath it. Mr. Manuel testified that the Defendant appeared intoxicated because he was swaying and smelled of alcohol.[19]

*Pierce,* 799 So.2d at 746.

Thus, it is clear that the State did not rely on the statutory presumption of intoxication. Therefore, the State did not have to present evidence of the accuracy or condition of the machine used to administer the test nor the qualifications of the operator

---

[19] *See* tr. pg. Taylor, 607-608, 610-614, 621; Clark, 625-629; Cynthia Deville, 580, 583-584; Otho Lee Deville, 650; John Goodman, 661; Manuel, 672-674.

of the machine.[20]

The record also reflects that the Third Circuit correctly found that the blood alcohol test was admissible because the test result was relevant, and that its probative value was not outweighed by its prejudicial effect. At trial, petitioner contended that he had not been drinking beer all day on the date of the accident, but rather that he had consumed alcohol after the accident while at his home. That version of events is directly contradicted by the testimony of the witnesses summarized above and by the testimony of Lieutenant Dwayne Fontenot of the Evangeline Parish Sheriff's Office who took petitioner's recorded statement the morning after the wreck.

In his statement, petitioner said that he drank only one beer before the wreck, but that he drank three or four sixteen-ounce beers after the wreck. [tr. pg. 720-721]. Following the statement, however, Lieutenant Fontenot searched petitioner's residence and found only one twelve-ounce can of beer. [tr. pg. 723, 725]. He also recovered a twelve pack beer carton, with six full cans and four empty cans, from Pierce's vehicle which had been locked up and taken to a salvage yard following the accident. [tr. pg. 726-727].

Defense witness, Joseph Gautreaux, a store owner in Pine Prairie, confirmed that petitioner had purchased a twelve pack of beer before the accident and stated that he was going to drink a couple and return. Gautreaux, however, never saw petitioner again that

---

[20]Officer Joseph R. Fontenot, Jr. of the Ville Platte City Police Department, the officer who administered petitioner's blood alcohol test, testified that he is certified to perform such testing. [tr. pg. 733-735].

day. [tr. pg. 781]. At the scene of the accident, the victims' father discovered a cold twelve pack of beer in petitioner's car. [tr. pg. 650-651]. Thus, the test result was relevant, not as presumptive proof of intoxication, but as additional proof that petitioner was under the influence at the time of the accident and that he lied to the police. This corroborates the eyewitness accounts of petitioner's condition prior to, and at the time of, the accident and disproved petitioner's claim of post-accident inebriation.

Moreover, the test result, although incriminating, was not outweighed by its prejudicial effect. All incriminating evidence is, by its nature, prejudicial to a defendant, but this does not thereby render the evidence inadmissible. Additionally, any prejudicial effect of the evidence was greatly reduced by the testimony of Officer Joseph R. Fontenot, Jr., the officer who administered the test and testified about the result. Officer Fontenot unequivocally testified on cross-examination that he was not claiming that the reading he got the morning after the accident was an indication of petitioner's blood alcohol level at the time of the accident; to the contrary, he stated that he had no idea about petitioner's blood alcohol content the evening before the test was administrated. [tr. pg. 750].

Finally, this court cannot find the evidence was overly prejudicial because, even without the admission of the blood alcohol test result, in light of the overwhelming lay testimony of petitioner's drunken state, the jury could have nevertheless concluded that petitioner was under the influence at the time of the accident. Thus, the blood alcohol test

result was properly admitted at petitioner's trial.

Since the undersigned has determined that no error occurred in the admission of the blood alcohol test result, petitioner has no basis for any alleged due process violation. *Robinson v. Whitley,* 2 F.3d 562, 566-67 (5th Cir. 1993) *citing Banks v. McGougan*, 717 F.2d 186, 190 (5th Cir.1983). Moreover, even if the blood alcohol evidence was erroneously admitted, for the above reasons, the court cannot find that the admission of the test result was a crucial, highly significant factor in the defendant's conviction. *Neal* and *Porter, supra.* Accordingly, petitioner is not entitled to federal *habeas* relief on this claim.

Petitioner's claim that the admission of blood alcohol test result created an unconstitutional mandatory presumption that relieved the State of its burden of proof fares no better. The arguments cited by petitioner were not improper and the passage in the jury instruction cited by petitioner was not confusing and created no prohibited mandatory presumption. As set forth above, the prosecutor never suggested that the jurors had to find petitioner guilty based on the blood alcohol test. To the contrary, he argued the exact opposite. Likewise, the cited passage of the jury instruction was not confusing and created no prohibited mandatory presumption. The Judge merely advised the jury that they could not "consider the evidence of one offense as evidence of any other offenses . . . except where the offense of Third Offense Driving While Intoxicated is an element of the two counts of Manslaughter." [tr. pg. 850]. That is a correct statement of

law.

Because third offense DWI was the sole underlying felony supporting the use of the felony-manslaughter doctrine, proof of commission of the offense was an element of the crime of manslaughter. *See State v. Henderson*, 292 So.2d 505, 509 (La. 1974) (noting that the underlying felony is an "essential element" of a felony-murder charge); *Sekou v. Blackburn*, 796 F.2d 108, 110 (5th Cir.1986) (noting that the underlying felony is a lesser-included offense of felony murder); *see also Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912 (1977). Indeed, that is exactly why the Louisiana Third Circuit Court of Appeal vacated petitioner's separate conviction of DWI third offense on double jeopardy grounds. *Pierce*, 799 So.2d at 750 ("the felony-manslaughter conviction in this case cannot be had without proof of all the elements of the felony DWI."). For these reasons, neither the charge, nor the charge in combination with the prosecutor's arguments, warrant federal *habeas corpus* relief.

### *Sufficiency of Evidence (Claim 6)*

A criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979). Furthermore, under *Jackson*, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326. Thus, when a defendant seeking federal *habeas* relief

contends that the evidence is insufficient to support a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991) *quoting Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Accordingly, federal *habeas* relief is appropriate only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *West v. Johnson,* 92 F.3d 1385, 1393 (5th Cir. 1996) *citing Jackson*, 443 U.S. at 322-26.

Moreover, review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, as those determinations are the exclusive province of the jury. *United States v. Young*, 107 Fed.Appx. 442, 443 (5th Cir. 2004) *citing United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *Garcia*, 995 F.2d at 561 *citing United States v. Greenwood*, 974 F.2d 1449,1458 (5th Cir. 1992); *United States v. Straach,* 987 F.2d 232, 237 (5th Cir. 1993); *Schrader*, 904 F.2d at 287; *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). Thus, all credibility choices and conflicting inferences are to be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) *citing Cyprian*, 197 F.3d at 740. The reviewing court is not authorized to substitute its interpretation of the evidence for that of the fact finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.1985).

Under the felony-manslaughter doctrine, Louisiana law requires the following elements be proved to support a conviction for manslaughter: (1) that a human being is killed, and (2) that at the time of the killing, the defendant was engaged in the perpetration, or attempted perpetration, of any felony not enumerated as sufficient to support first or second degree murder, which crimes include a felony grade DWI. La. R.S. 14:31(A)(2)(a). Moreover, under the felony-manslaughter doctrine, a showing of intent to cause death or great bodily harm at the time of the killing is not required, so long as the defendant is engaged in one of the felonies which may support the conviction. *Id*.

The crime of DWI has two essential elements. First, the offender must be operating a vehicle and second, relevant to the instant case, the operation must occur while the offender is under the influence of alcoholic beverages (intoxicated) or under the influence of any controlled dangerous substance, which substances include marijuana. La. R.S. 14:98(A)(1)(a) and (c). For the purpose of a repeat offender prosecution under La.R.S. 14:98, it is necessary to prove the prior convictions because these prior convictions are elements of the subject offense. La. R.S. 14:98(D); *see State v. Wiltcher, 956 So.2d 769, 776 (La. App. 2nd Cir. 2007) citing State v. Rolen*, 662 So.2d 446 (La.1995). Intoxication may be proved by all admissible evidence, including testimony of "arresting officers and others which relate indicia of intoxication discernible by the senses of sight, sound, or smell." *McElroy*, 553 So.2d at 458 *quoting Jones*, 316 So.2d at 105.

Petitioner argues that there was insufficient evidence to support his convictions for manslaughter. More specifically, petitioner argues that his convictions were based on the

improperly admitted blood alcohol test, the "flawed" July 15, 1994 conviction for DWI first offense (which allegedly failed to demonstrate that petitioner was advised of all of his constitutional rights as required under *Boykin*) and the state's improper "burden shifting remarks which created a mandatory/conclusive presumption." Hence, he asserts that the essential elements of his manslaughter convictions were not proved beyond a reasonable doubt.

As previously discussed, this court has found that petitioner's blood alcohol test was properly admitted and that the State's arguments to the jury were not improper and did not create a prohibited mandatory presumption. Further, the record reveals that on the second day of trial, the parties stipulated that petitioner had been previously convicted of DWI in both Lafourche and Evangeline Parishes. Accordingly, the jury was advised that they should accept that fact as having been proven, without need for further proof of those predicate DWI offenses. [tr. pg. 591-593]. Therefore, petitioner's arguments are without merit.

Furthermore, the evidence presented at trial, when viewed in the light most favorable to the State as required by *Jackson*, was more than sufficient to sustain petitioner's manslaughter convictions. The parties stipulated that both Joshua Lee Deville and Tyler Keith Deville were killed after they had been struck by the vehicle which petitioner was driving[21]. [tr. pg. 686-693]. The parties further stipulated to petitioner's

---

[21]The parties also stipulated that Patrick Neal Fontenot suffered serious bodily injury after he had been struck by the vehicle which petitioner was driving. [tr. pg. 686-693].

two prior DWI convictions. [tr. pg. 591-593]. The eyewitness testimony of Bobby

Taylor, Kenneth Clark, Cynthia Deville, Otho Lee Deville, John Goodman and Robert

Manuel, summarized above, clearly indicated that petitioner was under the influence of

alcohol and/or drugs at the time he was operating his vehicle. Thus, petitioner was

engaged in the perpetration of a felony (DWI third offense) at the time of the children's

deaths.

Both Taylor and Clark testified that petitioner had smoked marijuana and

consumed alcohol just prior to entering his vehicle approximately twenty minutes before

the accident; both confirmed that they believed petitioner was too drunk to be driving and

both declined to ride with him. [tr. pg. Taylor, 607-608, 610-611, 614, 621; Clark, 625-

629, 631; *See also* Isreal, 600]. Indeed, as petitioner exited Mr. Taylor's mother's house

approximately twenty minutes before the accident, petitioner was driving in an unsafe

manner, veering off of the driveway through a ditch. [tr. pg. Taylor, 611-612; Clark, 621,

629].

The witnesses also confirmed that petitioner did not know where he was, that he

appeared unsteady and unbalanced, that he was unable to stand on his own, that his

speech was slurred, that his eyes were yellow and that he smelled of alcohol. [tr. pg.

Taylor, 607-608, 610-614, 621; Clark, 625-629; Cynthia Deville, 580, 583-584; Otho Lee

Deville, 650; John Goodman, 661; Manuel, 672-674]. Indeed, in addition the testimony

of Taylor and Clark regarding petitioner's beer drinking and marijuana smoking just prior

to the accident, a twelve pack of cold beer was in the front of petitioner's car, with six full and four empty cans. [tr. pg. Otho Lee Deville, 650-651; D. Fontenot, 727-729]. This was apparently the twelve pack petitioner had purchased earlier at Gautreaux's store before the accident, which petitioner indicated that he was going to drink when he left Gautreaux's store. [tr. pg. 781].

Additionally, the witnesses confirmed that at the scene of the accident, petitioner's behavior was erratic and irrational, further supporting a finding of petitioner's drugged and/or intoxicated state. Petitioner's first words to the father of the dead children was "hey man I just ran over me three kids", and when the father of the children asked petitioner for help, petitioner stated "fuck you." [tr. pg. Otho Lee Deville, 638, 646-647]. Similarly, when the mother of the deceased children was crying and praying over the children's bodies, petitioner told her to "just cool it lady." [tr. pg. Cynthia Deville, 580-581].

Finally, petitioner did not even try to assist with the rescue of Patrick Neal Fontenot. [tr. pg. Manuel, 672]. Instead, Patrick Neal Fontenot confirmed that petitioner apparently attempted to drive away from the accident site, revving the engine of his car and spinning the wheels in the mud while he (Fontenot) was still trapped beneath the vehicle, throwing mud all over the bodies of the two dead children who had been previously pulled out of the ditch by their father. [tr. pg. P. Fontenot, 760; Otho Lee Deville, 646, 648]. These were clearly not the actions of an unimpaired man.

In sum, the evidence at trial concerning petitioner's guilt was overwhelming, and accordingly, the undersigned finds that "any rational trier of fact could have found the essential elements of manslaughter beyond a reasonable doubt." Therefore, this claim does not warrant *habeas* relief.

### Double Enhancement (Claim 4)

Petitioner argues that the use of a felony grade DWI as the predicate offense to support his conviction for manslaughter constitutes a "double enhancement." This claim was extensively discussed by the Louisiana Third Circuit Court of Appeal. That court rejected petitioner's state law based claim and alternatively granted relief to the extent petitioner's claim arose under the Double Jeopardy Clause, vacating the conviction and sentence for petitioner's less severely punishable offense, namely, petitioner's conviction and sentence for DWI third offense. *Pierce*, 799 So.2d at 748-750.

Petitioner does not allege any constitutional basis for this claim in this court. To the extent that petitioner bases his claim on the Double Jeopardy Clause, that claim is moot as petitioner's conviction for DWI third offense has been vacated by the Louisiana state courts on direct appeal. Furthermore, the Third Circuit properly vacated petitioner's sentence for the underlying felony, while maintaining his conviction and sentence for felony manslaughter. *Jones v. Thomas*, 491 U.S. 376, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989). Therefore, the state court's ruling should be upheld under the applicable standard of review because it is not contrary to, nor an unreasonable application of, federal law as

determined by the United States Supreme Court, nor does the ruling constitute an unreasonable determination of the facts in light of the record of the State court proceeding.

To the extent that petitioner complains that he was not properly charged with manslaughter based on the perpetration of DWI third offense as the use of that felony was an "unforseen combination" not contemplated under the statute, that issue is based entirely on Louisiana law. The Third Circuit rejected petitioner's claim expressly finding that "[a] technical reading of the manslaughter statute clearly allows such use." *Id*. at 749. It is not the province of this court to determine if the state courts properly applied state law. *Estelle v. McGuire,* 502 U.S. 62, 68, 112 S.Ct. 475, 480 (1991)*; Narvaiz v. Johnson*, 134 F.3d 688 (5th Cir. 1998). Federal courts "do not sit as a super state supreme court . . . ." *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983). Rather, "[f]ederal habeas corpus review is limited to errors of constitutional dimension . . . ." *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998); *Estelle,* 502 U.S. at 68, 112 S.Ct. at 480; 28 U.S.C. §2254(a). Accordingly, this court will not, and indeed cannot, review the state court's ruling on this issue.

### *Excessive Sentencing (Claim 5)*

Petitioner argues that his sentence for two counts of manslaughter and one count of first degree vehicular negligent injuring, totaling eighty-five years, is excessive. Specifically, petitioner argues that although his sentences fall within the statutory limits,

his sentence is nevertheless excessive because the court ordered his sentences to run consecutively, and because he should have been convicted of vehicular homicide rather than manslaughter based on petitioner's "already enhanced" third felony DWI.

Generally, the Eighth Amendment protects against not only barbaric punishments, but also those that are grossly disproportionate to the crime committed. *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); *Ewing v. California*, 538 U.S. 11, 20-24 (2003); *Lockyer*, 538 U.S. at 72. However, "[for] crimes concededly classified and classifiable as felonies, . . . the length of the sentence actually imposed is purely a matter of legislative prerogative." *Harmelin v. Michigan,* 501 U.S. 957, 962, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) *quoting Rummel v. Estelle,* 445 U.S. 263, 274, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). A federal *habeas* court will not upset a state sentence within statutory limits unless it is so disproportionate to the offense as to be completely arbitrary and shocking. *Bonner v. Henderson,* 517 F.2d 135, 136 (5th Cir.1975). In this regard, a "[court] must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." *United States v. Gonzales,* 121 F.3d 928, 942 (5th Cir.1997); *see also Ewing*, 538 U.S. at 24-25.

In light of *Solem's* general constitutional principle and other relevant jurisprudence, the Fifth Circuit has set forth its methodology for analyzing excessive sentence claims in *McGruder v. Puckett,* 954 F.2d 313, 315 (5th Cir.1992). First, the

court weighs the gravity of the offense against the severity of the sentence. *McGruder*, 954 F.2d at 316. Then, if the court determines that the sentence is grossly disproportionate to the offense, the court compares (2) sentences for similar crimes in the same jurisdiction and (3) sentences for the same crime in other jurisdictions. Only if the court concludes in the first inquiry that the sentence is "grossly disproportionate" to the offense, does the court proceed to determine the second and third inquiries. *United States v. Gonzales*, 121 F.3d 928, 942-943 (5th Cir. 1997). If the court concludes that the sentence is not "grossly disproportionate," the inquiry is finished, and the court "defer[s] to the will of [the legislature]." *Gonzales*, 121 F.3d at 942-43.

Here, the issue of whether petitioner's sentence is unconstitutionally excessive turns on whether petitioner's punishment arrives at this threshold level of gross disproportionality. The Supreme Court noted the inherent subjectivity in making this threshold determination in *Rummel*, 445 U.S. at 304. Moreover, the Supreme Court has noted that outside of the capitol punishment context, successful proportionality challenges are "exceedingly rare" and constitutional violations are therefore reserved only for an "extreme" "extraordinary case." *Ewing*, 538 U.S. at 21; *Lockye*r, 538 U.S. at 73 and 77. In *Rummel,* the Supreme Court upheld a life sentence under a recidivist statute for a petitioner who had fraudulently used a credit card, passed a forged check, and finally, obtained $120.75 under false pretenses. Subsequent jurisprudence in this circuit has used *Rummel* as a benchmark for distinguishing constitutional sentences and grossly

disproportionate punishments. *Gonzales,* 121 F.3d at 943.

Measured against the *Rummel* benchmark, petitioner's consecutive forty year sentences on the manslaughter convictions and consecutive five year sentence on the vehicular negligent injuring conviction, all of which are within the statutorily prescribed limits, are plainly constitutional. First, the gravity of the offenses committed by petitioner are clearly more severe than the crimes of fraud and forgery punished by life imprisonment in *Rummel*. Petitioner killed two innocent children and severely injured a third. Second, unlike the crimes at issue in *Rummel*, the crimes committed by petitioner while deliberately operating a motor vehicle while drunk, which resulted in two deaths and severe physical injury, warrants the most severe punishment.

Finally, the record reveals that petitioner had previously been convicted of numerous crimes involving alcohol and controlled substances, including convictions in Texas for drunkenness, possession of a controlled dangerous substance (cocaine), possession of marijuana, and three DWI's, and convictions in Louisiana for DWI first and DWI second, as well as Louisiana convictions for driving under suspension (twice), careless operation with an accident, speeding, resisting arrest by flight and failure to use a turn signal while turning. This criminal record demonstrates petitioner's consistent history of recidivism. [suppl. vol. 5, sealed exhibits, Pre-Sentence Investigation Report].

Accordingly, applying the benchmark test set forth in *Rummel,* the undersigned finds that the facts of this case do not meet the threshold level of gross disproportionality;

therefore, the sentences are consistent with the constitutional requirements of the Eighth Amendment. Thus, petitioner's claim is without merit.

### Denial of Post-Verdict Judgment of Dismissal (Claim 7)

Petitioner contends that the trial court erred when it refused to allow petitioner to present evidence at the hearing on his *pro se* motion for post-verdict judgment of acquittal. More specifically, he asserts that the trial court erred in not permitting him to enter the tape recording of his 1994 guilty plea transcript to verify that he was not advised of his right to remain silent.[22] The State contends that this claim should be considered procedurally defaulted because by this claim petitioner, in essence, seeks to urge an argument which was never properly presented to the Louisiana state courts.

The record reveals that at the October 5, 2000 hearing on the motion, the State objected on grounds that the only evidence which could be considered on post-verdict judgment of dismissal was the evidence presented at trial. The State argued that the motion should be granted only if the trial evidence did not reasonably permit a finding of guilt, and the tape had not been filed in evidence at trial. [suppl. vol 2, pg. 81, 83]. The State further argued that the transcript of the plea had previously been found admissible and that the defendant had failed to challenge the trial court's ruling on admissibility. [*Id.* at 83]. The trial court "sustain[ed] the State's position" and denied the motion. [*Id.*].

---

[22]This claim is apparently based on the transcript of the 1994 guilty plea proceeding which contains what appears to be a typographical error (omission) when the judge was explaining petitioner's constitutional rights. The transcript reads that petitioner would waive "your right to remain or testify in your own behalf if you so desire." [*See* suppl. vol. 5, sealed exhibits, 7-29-94 Guilty Plea and Sentencing Transcript].

As previously discussed, the Third Circuit, on direct appeal, upheld the validity of the prior plea, specifically finding that prior to trial petitioner had failed to attack the validity of the plea on grounds that he had not been advised of his right to remain silent. *Pierce*, 799 So.2d at 741-743. The court also noted that at trial defense counsel stipulated that the defendant had been previously convicted of DWI in Lafourche and Evangeline Parishes. *Id*. at 744. After the stipulation, the tape recording was not needed.. *Id*. Because petitioner was again essentially attacking the validity of his prior plea in his post-verdict motion, for the reasons previously stated with respect to petitioner's challenge to the prior plea, the court found the claim was without merit.[23] *Id*. at 752.

This court has found that petitioner's claim that he was not advised of his right to remain silent during his 1994 guilty plea is procedurally defaulted. Petitioner is again attempting to challenge the validity of his prior plea on grounds that were not properly raised in the state courts. For the reasons set forth with respect to claim two above, to the extent that petitioner challenges his prior plea on grounds that he was not advised of his right to remain silent, that claim is procedurally barred.

Moreover, to the extent that petitioner claims improper denial of his *pro se* post-verdict judgment of acquittal motion, that claim is without merit. Under Louisiana law, a post-verdict judgment of acquittal may "be granted only if the court finds that the

_____

[23]The court also noted that post-conviction counsel Hayes filed a Motion to Review and Listen to the Audio Tape of petitioner's 1994 plea. [suppl. vol. 3, pg. 142-143, 151]. At the June 9, 2004 hearing of that Motion, Ms. Hayes withdrew the Motion. [*Id*. at pg. 9].

evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty." La.C.Cr.P. art. 821(B). The Motion raises the question of sufficiency of the evidence and is therefore considered under a standard virtually identical to that applicable to appellate review of claims of insufficient evidence under *Jackson v. Virginia, supra. State v. Jones,* 952 So.2d 705, 707 (La.App. 4th Cir. 2006) *citing State v. Thibodeaux*, 750 So.2d 916, 926 (La.1999); *State v. Williams,* 891 So.2d 26, 30 (La. App. 4th Cir. 2004) *citing State v. Brown*, 620 So.2d 508, 513-514 (La.App. 4 Cir.1993). Indeed, appellate review of the denial of such a motion is controlled by the standards set forth in *Jackson. State v. Durand*, 963 So.2d 1028, 1033 (La.App. 5th Cir. 2007).

This court has previously determined that there was sufficient evidence to support petitioner's manslaughter convictions under the *Jackson* standard. Accordingly, the trial court committed no error when it denied petitioner's Motion for Post-Verdict Judgment of Acquittal. Furthermore, because petitioner's convictions have been upheld under the *Jackson* standard, the denial was not contrary to, nor was it an unreasonable application of, federal law as determined by the United States Supreme Court, nor does the ruling constitute an unreasonable determination of the facts in light of the record of the State court. For these reasons, petitioner's claim does not warrant federal *habeas corpus* relief.

### *Ineffective Assistance of Counsel (Claim 11)*

Petitioner argues that he received ineffective assistance of counsel because of counsel's failure to obtain and call a "forensic engineer", failure to call witness Christine

Clark (regarding road and weather conditions), failure to call "other witnesses" presumably Stacey Guillory, Phil Delafosse and Molly Gautreaux to dispute petitioner's intoxication, failure to call an expert, presumably Dr. Ronald Padgett, to opine on petitioner's state of shock as a result of the accident as promised in opening argument, and failure to present a vehicular homicide defense and request a special jury instruction regarding such a defense. Each claim is addressed below.

To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984). The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. The court's scrutiny is "highly deferential" and the court must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689-90. "It is not enough to show that some, or even most, defense lawyers would have handled the case differently." *Nichols v. Scott,* 69 F.3d 1255, 1284 (5th Cir. 1995) *quoting Green v. Lynaugh*, 868 F.2d 176, 178 (5th Cir.), *cert. denied*, 493 U.S. 831, 110 S.Ct. 102, 107 L.Ed.2d 66 (1989). As the Supreme Court has observed, "[i]t is all too tempting for a defendant to secondguess counsel's assistance after conviction." *Green,* 868 F.2d at 178 *quoting Strickland*, at 689.

To establish prejudice, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding," *Strickland,* 466 U.S. at 693. Rather, *Strickland'*s prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[24] A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) *citing Strickland,* 104 S.Ct. at 2068. However, self serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland'*s prejudice element." *Id.*

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland,* 466 U.S. at 689-94. Petitioner must satisfy both prongs of *Strickland,* demonstrating both that counsel's performance was deficient and that the deficiency

---

[24]The *Strickland* court outlined the extent of prejudice that must be established by the defendant:
> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment. *Cf. United States .v Morrison,* 449 U.S. 361, 364-65 (1981).

> Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability exists if the probability is sufficient to undermine confidence in the outcome.

> When a defendant challenges a conviction , the question is whether there is reasonable probability that absent the errors the fact-finder would have a reasonable doubt respecting guilt.

*Strickland, supra*, at pages 691-692.

prejudiced the defense. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson,* 160 F.3d 1029, 1035-36 (5th Cir. 1998). However, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.*" Green,* 160 F.3d at 1043.

Initially the undersigned notes that contrary to petitioner's allegations, his trial attorney, Blake Deshotels, was not under suspension at the time of petitioner's trial which began on October 19, 1998 and concluded on October 21, 1998. By decision dated October 9, 1998, the Louisiana Supreme Court ordered that Mr. Deshotel be suspended from the practice of law for six months, with all but sixty days deferred. *In re Deshotels*, 719 So.2d 402 (La. 10/9/98). That suspension did not become effective, however, until after the fourteen day delay for filing an application for rehearing had expired, that is, on October 23, 1998. *See* La.S.Ct. Lawyer Disciplinary Rule 19, § 26(E); La.C.C.P. art. 2167. Thus, Mr. Deshotel was not under suspension during petitioner's trial.

**Vehicular Homicide Defense/Special Jury Instruction**

Petitioner argues that his counsel was ineffective for failing to "present a defense of vehicular homicide" and to request a special jury instruction on vehicular homicide. As this court has previously stated, petitioner was not tried for vehicular homicide. He was charged with, and tried for, manslaughter. Vehicular homicide is a separate and distinct offense which is not a responsive verdict to, nor a lesser and included offense of, manslaughter. *See* La.C.Cr.P. art. 814(A)(5). As such, vehicular homicide was not a

verdict which could have been returned on a charge of manslaughter. Petitioner's

attorney was therefore not deficient in failing to raise this non-existent issue, nor was he

deficient in failing to request a special jury charge to which petitioner was not entitled.[25]

For these reasons, petitioner's claim is without merit.

## Failure to Call Dr. Padgett

Petitioner contends that his counsel was ineffective for failing to call Dr. Ronald

Padgett, a pathologist, to opine on petitioner's state of shock as a result of the accident,

as promised in opening argument. Petitioner contends that Dr. Padgett's testimony would

have shown that while petitioner's behavior at the scene was consistent with intoxication,

it was also consistent with a state of shock exhibited by persons who have caused

grievous injuries to others. According to petitioner, Dr. Padgett would have been able to

explain that petitioner was in a state of shock immediately after the accident, and that this

testimony could have countered the testimony of the victims' mother and father which

indicated that petitioner's behavior was that of an intoxicated person.

The record reveals that Mr. Deshotel did obtain an Order appointing Dr. Padgett as

an expert for the defense at the cost of the State. [rec. doc. 1-5, pg. 20-21, Exhibit E].

However, the record in both this and the state court is devoid of any evidence that Dr.

---

[25]Indeed, the United States Supreme Court has held that in capitol cases where the death penalty is imposed, state trial courts are not constitutionally required to instruct juries on offenses that are not lesser-included offenses of the charged offense under state law. *See Hopkins v. Reeves,* 524 U.S. 88, 90-91, 118 S.Ct. 1895, 141 L.Ed.2d 76 (1998). In so holding, the Court expressly found no constitutional requirement that state courts give instructions on "lesser related offenses" even if supported by the evidence. *Hopkins,* 118 S.Ct. at 1901.

Padgett would have testified favorably on petitioner's behalf as petitioner suggests. To the contrary, at the hearing on petitioner's post-conviction application, petitioner failed to present Dr. Padgett's testimony, affidavit or expert report on this issue, although he had the opportunity to do so. This failure is fatal to petitioner's *habeas* claim. *See Evans v. Cockrell*, 285 F.3d 370, 377-378 (5th Cir. 2002) (although petitioner obtained funds for an expert, petitioner presented no evidence of the results of scientific testing and thus his unsupported claim failed to demonstrate reasonable doubt concerning his guilt or that his counsel deprived him of a fair trial); *Cockrell v. Dretke,* 88 Fed.Appx. 34, 38 (5th Cir. 2004) (petitioner failed to satisfy his burden because no experts substantiated petitioner claims).

Complaints of uncalled witnesses are not favored in federal *habeas corpus* review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what the witness would have testified are largely speculative. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir.2001) *citing Lockhart v. McCotter,* 782 F.2d 1275, 1282 (5th Cir. 1986), *Marler v. Blackburn,* 777 F.2d 1007, 1010 (5th Cir. 1985), *Murray v. Maggio,* 736 F.2d 279, 282 (5th Cir.1984), *United States v. Cockrell,* 720 F.2d 1423, 1427 (5th Cir. 1983), and *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978); *Evans*, 285 F.3d at 377. "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, a habeas court cannot even begin to apply *Strickland* 's standards because it is very difficult to assess whether counsel's

performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance." *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994). Moreover, where the only evidence of a missing witness's testimony is from the defendant, courts view such claims with great caution. *Sayre,* 238 F.3d at 636 *citing Lockhart,* 782 F.2d at 1282, *Marler,* 777 F.2d at 1010, *Murray,* 736 F.2d at 282, *Cockrell,* 720 F.2d at 1427, and *Buckelew* , 575 F.2d at 521. Thus, "[a] prisoner's bald conclusory assertion that [favorable] witnesses were not called does not serve to 'overcome the strong presumption that his counsel's actions were reasonable.'" *Sayre,* 238 F.3d at 636 *citing Marler,* 777 F.2d at 1010. Finally, to demonstrate the requisite *Strickland* prejudice, the petitioner must show not only that the witness' testimony would have been favorable, but also that the witness was available and willing to testify at trial. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981).

Although petitioner speculates as to the content of the Dr. Padgett's testimony, he fails to affirmatively demonstrate that such testimony would not only have been available, but also would have been favorable and sufficiently exculpatory to have undermined confidence in the resulting verdict. Such speculative, hypothetical, conclusory and self-serving allegations of what an expert might have said are insufficient to warrant *habeas* relief. *See Lovett v. State*, 627 F.2d 706, 709-710 (5th Cir. 1980) ("Lovett asks us to assume that had the analysis been done it would have proven to be exculpatory, but he

offered nothing but his own protestations of innocence to support this allegation. In sum, we cannot conclude on this record that this failure to obtain a handwriting analysis prejudiced Lovett in the least."); *Brigham v. Cockrell,* 2002 WL 1776933 at *4 (N.D.Tex. 2002) (other than speculating . . . petitioner offers no evidence that any coercive, suggestive, or otherwise inappropriate techniques were used in this case. Without such evidence, the Court cannot conclude that the testimony of an expert would have affected the outcome of the trial."); *Price v. Dretke*, 2003 WL 22519439, *6 (N.D.Tex. 2003) ("Petitioner has failed to show that any fingerprint expert would have testified that the print in fact did not belong to Petitioner. Petitioner's conclusory allegations are not sufficient."). *See also Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir.1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in *habeas* proceedings); *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir.1985) ("for the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial."); *Martin v. McCotter,* 796 F.2d 813, 819 (5th Cir.1986) ("hypothetical or theoretical testimony will not justify the issuance of a writ . . . ."); *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir.1978); *Boyd v. Estelle,* 661 F.2d 388, 390 (5th Cir.1981); *Green,* 160 F.3d at 1043; *Sayre,* 238 F.3d at 635. For these reasons, federal *habeas* relief on this claim is not warranted.

Petitioner also complains that counsel was ineffective for telling the jury in opening argument that there would be testimony that "people who cause grievous injuries . . . in this type of accident, go into shock", and then not presenting this evidence as promised. The record reveals that during opening argument defense counsel told the jury that the State had to show that Pierce exhibited the type of characteristics consistent with a person whose blood alcohol level was .10, and that those characteristics were not from some other cause. Defense counsel then stated that "you are going to, I'm sure you're going to hear this from at least one physician that's going to testify. That not only are the people who get hurt in the accident go into shock, but people who cause grievous injuries that occurred in this type of accident, go into shock also." [tr. pg. 561].

However, the record also reveals that during trial, the parties stipulated as to all medical issues associated with the charged offenses, namely, that both Joshua Lee Deville and Tyler Keith Deville were killed and that Patrick Neal Fontenot suffered serious bodily injury after they had been struck by the vehicle which petitioner was driving. [tr. pg. 686-693]. This stipulation "eliminated" the need for seven witnesses. [tr. pg. 688].

From the record before this court, defense counsel did not promise to present the testimony of Dr. Padgett on this point as petitioner suggests, nor does it appear that defense counsel promised to present any other defense witness to testify about petitioner's state of shock. Rather, it appears that defense counsel was going to elicit testimony from the State's medical experts about the state of shock associated with causing others

grievous injuries.[26]  During the trial, however, counsel decided to stipulate to the medical issues and thus forego his intended cross-examination of the medical experts, rather than have this potentially inflammatory testimony regarding the cause and nature of the children's deaths and injuries presented live to the jury.

Under the circumstances of this case, the undersigned cannot find that decision was unreasonable.  To the contrary, that decision appears to have been a rational tactical choice to avoid the State's presentation of testimony which would have unquestionably played on the sympathy of the jurors.  Federal *habeas* courts should not  question a counsel's reasonable strategic decisions. *Bower v. Quartermann*, 497 F.3d 459, 470 (5th Cir. 2007) *citing Strickland*, 466 U.S. at 691.  For these reasons, federal *habeas* relief is not warranted.

**Failure to Obtain a "Forensic Engineer"**

Petitioner contends that his counsel was ineffective for failing to obtain a "forensic engineer", that is, an accident reconstruction expert, to render expert opinion on the presence or absence of skid marks, the "coefficients of friction (drag factors)", the speed of petitioner's vehicle, the point of impact, average driver reaction time prior to the point of impact, and "right of way determinations", as well as testimony regarding the road condition (hills, surface and lane width) and visibility, all of which could have allegedly supported a viable defense, namely, that "a reasonable doubt existed that the accident was

---

[26]This finding is reinforced by the fact that Dr. Padgett is a pathologist, not a psychiatrist or other mental health expert with expertise in the diagnosis or treatment of persons suffering from shock.

unavoidable."  He also argues that an accident reconstruction expert could have used demonstrative aids, such as a videotape tape of the speedometer of a car approaching the accident scene, to support his testimony and persuade the jurors of his innocence.

In both this court and the state court, petitioner failed to identify a qualified accident reconstruction expert capable of testifying favorably on petitioner's behalf as petitioner suggests.  Like petitioner's claim regarding the testimony of Dr. Padgett, this failure is fatal to his *habeas* claim. *See Earhart v. Johnson*, 132 F.3d 1062, 1067-1068 (5th Cir. 1998) ("Earhart's failure to identify an expert whose testimony would have altered the outcome of his trial is fatal to his habeas claim."); *Evans*, 285 F.3d at 377-378; *Crane v. Johnson*, 178 F.3d 309, 315 (5th Cir. 1999) ("[E]ven assuming that trial counsel erred in failing to seek the appointment of a confidential mental health expert, Crane has not shown how he suffered prejudice from this failure.  Crane produced no persuasive psychiatric evidence in the district court that if produced at trial, would have undermined confidence in the resulting verdict.); *Cockrell,* 88 Fed.Appx. at 38; *Brigham,* 2002 WL 1776933 at *4 *citing Anderson v. Collins,* 18 F.3d 1208, 1221 (5th Cir.1994) ("petitioner has failed to identify a qualified expert capable of testifying on this subject . . ." and the court cannot even begin to analyze ineffective assistance of counsel claim without affirmative showing of missing evidence or testimony); and *Gibson v. Dretke*, 2003 WL 22287516, *5 (N.D.Tex. 2003) ("Gibson has failed to show a reasonable probability that an independent expert witness would have been of assistance to the defense and that

denial of such expert assistance resulted in a fundamentally unfair trial).

Although petitioner speculates as to the content of the unidentified expert's testimony, he fails to affirmatively demonstrate that such testimony would not only have been available, but also would have been sufficiently favorable and exculpatory to have undermined confidence in the resulting verdict. Such speculative, hypothetical, conclusory and self-serving allegations of what an unidentified expert might have said are insufficient to warrant *habeas* relief. *See Lovett*, 627 F.2d at 709-710; *Brigham,* 2002 WL 1776933 at *4 ("other than speculating . . . petitioner offers no evidence that any coercive, suggestive, or otherwise inappropriate techniques were used in this case. Without such evidence, the Court cannot conclude that the testimony of an expert would have affected the outcome of the trial."); *Gibson*, 2003 WL 22287516 at *5; *Price*, 2003 WL 22519439 at *6. *See also Ross, Alexander; Martin; Buckelew*; *Boyd*; *Green,* and *Sayre, supra.* [27]

To the extent that petitioner relies on the April 6, 2001 letter he received from attorney J. Kevin Stockstill, in response to an inquiry from petitioner, that reliance is unfounded. In his letter, Stockstill opines that in his "experience in dealing with

---

[27]To the extent that petitioner also claims that counsel was ineffective for failing to call petitioner's father to testify about a video he had taken of the accident scene after the accident, or to use that video at trial, for these same reasons that claim is without merit.
    Likewise, to the extent that petitioner also argues that his counsel was ineffective for breaching his promise to the jury that it would hear testimony that the sun was "blaring into Mr. Pierce's windshield" and that when Pierce "finally observed the children he swerved to the left to avoid the accident . . ." that claim is without merit. The petitioner's version of the accident was presented via petitioner's post-arrest statement to police wherein he stated that the boys "came out of nowhere" and that the reason his vehicle was found on the wrong side of the road after the accident was because he was "trying to keep from hitting them boys." [tr. pg. 719].

*vehicular homicides*" it "is crucial that an accident reconstructionist be brought in on the side of the defense." (emphasis added). It is clear from this letter, which was written while petitioner's manslaughter convictions were being reviewed on direct appeal, that Stockstill was contemplating a reversal of petitioner's manslaughter convictions on appeal and that he was opining on his possible representation of petitioner during a subsequent trial for vehicular homicide; Stockstill was not opining on manslaughter prosecutions or the proper defense of such cases. This is evidenced by a review of the letter in its entirety. Stockstill states that he had heard of petitioner's manslaughter convictions and that he thought "that the most [petitioner] could be convicted of would have been vehicular homicide . . . ." Therefore, Stockstill states that "if you are successful in having your [manslaughter] convictions overturned I would be more than happy to sit down with you to discuss your case and discuss my fee for representation." Stockstill further advised petitioner that he should be "prepared financially" to bring in an accident reconstructionist, presumably in connection with a future prosecution for vehicular homicide. He concludes that if petitioner's appeal s successful, either petitioner or his family should contact him to arrange a meeting. [rec. doc. 1-5, pg. 19, Exhibit D].

Even if Stockstill would have presented testimony of an accident reconstructionist in petitioner's manslaughter prosecution, "[i]t is not enough to show that some, or even most, defense lawyers would have handled the case differently." *Nichols v. Scott,* 69 F.3d 1255, 1284 (5th Cir. 1995) *quoting Green v. Lynaugh*, 868 F.2d 176, 178 (5th Cir.), *cert.*

*denied*, 493 U.S. 831, 110 S.Ct. 102, 107 L.Ed.2d 66 (1989).

For the reasons discussed above, petitioner's claim this his counsel was ineffective for failing to obtain a "forensic engineer" or an expert in accident reconstruction, is without merit. Petitioner has failed to satisfy either the first or second *Strickland* inquiries.

**Failure to Call Witnesses**

Next, petitioner contends that his counsel was ineffective for failing to call Christine Clark to testify about the condition of the road where the accident occurred, and failing to call "other witnesses" presumably Stacey Guillory, Phil Delafosse and Molly Gautreaux to dispute petitioner's intoxication at the time of the accident. These claims were addressed at the hearing on petitioner's post-conviction application. Testifying at the hearing were Ms. Clark, Mr. Delafosse and Ms. Gautreaux.

At the hearing, Ms. Clark testified that a year prior to the accident involved in Pierce's prosecution, she had been involved in an accident on the same roadway near the site of petitioner's collision with the boys on bicycles. In that accident, Clark testified that she was driving slowly when a four-wheeler came out of the woods on to the roadway. She hit her brakes and her car slid and hit the four-wheeler. She stated that the road was narrow and that, at that time, trees were hanging over the roadway. [suppl. vol. 3, pgs. 227-228].

The State objected to the entirety of Ms. Clark's testimony as totally irrelevant. [*Id*.]. In her affidavit, which accompanied petitioner's post-conviction application, Ms. Clark described the same accident and opined that this accident was caused by the narrowness of the road and the darkness of the area due to trees which overhung the roadway. She added, however, that "[t]his is a statement that Christine Clark gave to attorney Blake Deshotel to use in the trial of James Christopher Pierce. He did not use this statement or call her as a witness." [*Id.* at pg. 120].

Mr. Delafosse testified at the hearing on direct examination that prior to the accident he had seen Pierce at the Gautreaux's Pine Prairie store and that he was not drunk. He provided no details as to how he reached that conclusion. He further testified that he was available to be a witness at Pierce's trial, but that he had not been called to testify. [*Id*. 234-236]. This testimony was consistent with an "affidavit" which had been submitted by Pierce in support of post-conviction relief in which Delafosse stated that he "notified the Pierce family that I had seen James Christopher Pierce prior to the accident and Pierce was not intoxicated; and I would have testified to that, but was not called to testify on behalf of defendant."[*Id.* at 122].

During cross examination Delafosse candidly admitted that, while he had talked with petitioner's brother Tim about his having seen Pierce prior to the accident, this conversation occurred *after* Pierce had been convicted; he had not talked with anyone in the Pierce family before Pierce was convicted and, hence, they had no knowledge of him

(or his potential testimony) prior to the trial. [*Id.* at 240]. He further admitted that he had not prepared the "affidavit", that the "affidavit" states an incorrect time that he had seen Pierce, and that he had not appeared before the notary to sign the document, but rather the document had been signed by the notary and witnesses after he signed it. [*Id.* at 237-239].

On motion of the State, the court therefore struck the affidavit and ruled that, to the extent the affidavit formed part of the record, it could not be considered. [*Id.* at 243]. Petitioner's counsel, Ms. Hayes, apologized to the court, explaining that she had no knowledge of the circumstances of the preparation of the affidavit or the testimony which would be given by Mr. Delafosse. [*Id.*].

Ms. Gautreaux, the wife of Joseph Gautreaux, testified that Pierce came into their convenience store about one hour prior to the accident to play pool with her husband, and at that time he was not drunk. She gave no details as to the facts on which her opinion was based. She further testified that when he left the store, Pierce said that he would come back. [*Id.* at 230-231]. In her undated recorded statement, a transcript of which was submitted in support of petitioner's post-conviction application, Ms. Gautreaux stated that Pierce arrived at the store at around 7:00 p.m., and added that "when he left he purchased something." [*Id.* at 123].

At the conclusion of the hearing, the court denied petitioner's claims of ineffective assistance of counsel finding that:

> The witnesses that you had today didn't say anything about their interaction
> with Mr. Deshotels at all. They didn't say whether or not Mr. Deshotels

knew of their testimony or not, except Mr. Delafosse who said he hadn't talked to anyone till after the trial. There . . . on the appeal the question of whether Mr. Pierce was drunk or not was considered. There were testimony . . . there was evidence that showed that he was drunk, that was discussed in the court of appeals. Sufficiency of the evidence was discussed in the court of appeals and was found to be sufficient. I see nothing this afternoon that changes that, even though you could of maybe had another witness that said we didn't think he as drunk, neither of these are experts, neither one of them said what condition he was in, what he was . . . if he was speaking clearly, or if he was stumbling, none of that was brought out this afternoon. They just said he wasn't drunk. Now, what that means, I don't know . . . . the lawyer is architect of his own case. If he chooses to proceed in one manner or another, that is his decision. I don't see anything here that would show me that he was ineffective and I also want you to understand something. You keep talking about vehicular homicide, he was charged with manslaughter. That's a choice that was made by the prosecution and Mr. Deshotels can argue all he wants that he thinks it should have been under vehicular homicide, if the D.A. brings it under manslaughter, its up to the jury to decide if it fits manslaughter or not, and they did. Now's not the time to question that. [*Id*. at 256-258].

For the reasons which follow, the state court's ruling should not be disturbed. The ruling is neither contrary to, nor an unreasonable application of, clearly established federal law, nor an unreasonable determination of the facts in light of the state court record.

It is clear that counsel was not ineffective in failing to call Ms. Clark to testify at petitioner's trial. As noted by both the state court and this court, Pierce was not tried for vehicular homicide. Accordingly, whether the road was narrow, in poor condition or not well lit was not relevant to the defense. Petitioner's counsel was therefore not deficient in failing to present this testimony. Furthermore, even if the condition of the road or visibility at the scene of the accident was in any way relevant to petitioner's manslaughter

83

prosecution, presentation of Ms. Clark's testimony about the road as it existed one year

prior to Pierce's accident could not reasonably be found to have raised a reasonable

probability that the result of the proceeding would have been different.  That Clark's

testimony may have had some conceivable effect on the outcome of the proceeding is

insufficient. *Strickland, supra*.

Likewise, counsel was not ineffective for failing to call Phil Delafosse, Stacey

Guillory or Molly Gautreaux to dispute petitioner's intoxication.  As found by the state

court, there is no competent evidence that petitioner's counsel, Mr. Deshotel, had any

knowledge of these witnesses or their allegedly potentially favorable testimony prior to

trial.  To the contrary, the testimony of Mr. Delafosse affirmatively disproved any such

contention.  The sole evidence of counsel's alleged knowledge of these witnesses is

petitioner's own self-serving conclusory allegations in his pleadings.  However, such

conclusory allegations in support of a claim of ineffective assistance of counsel are

insufficient to raise a constitutional issue. *Green,* 160 F.3d at 1043;  *Ross v. Estelle,* 694

F.2d at 1011-1012.

Petitioner had the burden of proving his counsel was ineffective, that is, that Mr.

Deshotels' actions were objectively unreasonable*.  See Crane* and *Strickland, supra*.

Federal courts recognize that the duty of trial counsel to investigate is tempered by the

information provided to counsel, and that an ineffective assistance of counsel claim based

upon such a failure must, in that light, be directly assessed for reasonableness. *See Carter*

*v. Johnson*, 131 F.3d 452, 464 (5ᵗʰ Cir. 1997). Defense counsel cannot be faulted for

failing to call witnesses whom petitioner himself failed to timely disclose. In the absence

of competent evidence demonstrating that Mr. Deshotels knew of these alleged witness

before trial, a finding that his actions were objectively unreasonable is precluded. *See*

*Kramer v. Butler*, 845 F.2d 1291 (5ᵗʰ Cir. 1988) (defense counsel were not ineffective

because they lacked knowledge of the alleged evidence at issue prior to trial).

Furthermore, even if defense counsel was aware that Molly Gautreaux could be

called as a defense witness, given the trial testimony of Ms. Gautreaux's husband, the

undersigned cannot find that defense counsel's failure to call Ms. Gautreaux was

objectively unreasonable. Although Joseph Gautreaux testified to petitioner's alleged

sobriety prior to the accident, as outlined above, his testimony was also unfavorable to the

defense. On cross examination, Gautreaux confirmed that petitioner had in fact bought a

twelve pack of beer when he left the store before the accident and that he said that he was

going to drink "a couple" and return. This was apparently the same twelve pack that was

found half consumed in petitioner's vehicle.

In her recorded statement, like her husband, Ms. Gautreaux confirmed that

petitioner had purchased "something" before he left the store. It is therefore entirely

reasonable that counsel would not call Ms. Gautreaux to avoid the risk of compounding

unfavorable evidence against petitioner. *See Thompson v. Cain*, 161 F.3d 802, 813-814

(5ᵗʰ Cir. 1998) (a decision made in order to avoid the risk of compounding unfavorable

evidence against the defendant held not to amount to attorney error). This *habeas* court must be careful not to second guess legitimate strategic choices made by defense counsel. *Sawyer v. Butler*, 848 F. 2d 582, 587-88 (5th Cir. 1988); *see also Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997).

Likewise, even if counsel was aware of the potential testimony of Mr. Delafosse and Mr. Guillory, counsel cannot be faulted for failing to present their testimony. Like Mr. and Mrs. Gautreaux, they allegedly saw petitioner at Gautreaux's store on the date of the accident. However, the State presented evidence of petitioner's condition after petitioner left the store and his condition at the scene of the accident, purportedly after petitioner drank the majority of the beer he purchased at the Gautreaux's store. Given the strength of this testimony, it would not have been unreasonable for counsel to have chosen not to present testimony of additional witnesses who had seen petitioner at the Gautreaux's store earlier that date. This is particularly true, given the adverse effect that Mr. Gautreaux's testimony may have had on the jury.

Furthermore, petitioner has not established that his attorney's failure to utilize Ms. Gautreaux, Mr. Delafosse or Mr. Guillory as witnesses had any effect on the outcome of his trial. To the contrary, these witnesses may have proven more harmful than helpful to petitioner at trial. Moreover, given the conclusory nature of their proffered testimony, which lacked any details as to the facts upon which their conclusion of sobriety was based, petitioner has not shown that there is reasonable probability that the result of the

proceeding would have been different. *Sayre*, *Strickland, supra*.

In sum, petitioner has not shown that his attorney, Blake Desohotels, was deficient or that he was prejudiced by his counsel's failure to utilize Molly Gautreaux, Phil Delafosse or Stacey Guillory as witnesses for the defense; his claims of ineffective assistance of counsel therefore fail.

For the reasons set forth above;

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79**

**F.3d 1415 (5th Cir. 1996).**

      **THUS DONE AND SIGNED** August 24, 2008, at Lafayette, Louisiana.


*C. Michael Hill*
_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE